## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SOCIETY OF ST. VINCENT DE PAUL IN THE ARCHDIOCESE OF DETROIT**, a Michigan Nonprofit Corporation, and **PLANET AID**, a Massachusetts Nonprofit Corporation,

         Plaintiffs,

v.

**AMERICAN TEXTILE RECYCLING SERVICES**, d/b/a ATRS, a Houston corporation,
         Defendant.

HON.  Denise Page Hood
Case No.  2:13-cv-14004-DPH-LJM

---

**DALTON & TOMICH plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiffs
41000 Woodward Ave. Ste 345 East
Bloomfield Hills MI 48304
Tel. (248) 971-2400
Fax (248) 971-1906
ddalton@daltontomich.com

---

## <u>FIRST AMENDED VERIFIED COMPLAINT</u>

NOW COMES the Plaintiffs, Society of St. Vincent de Paul in the Archdiocese of Detroit ("SVdP") and Planet Aid (jointly "Plaintiffs") by and through their attorneys, ***Dalton & Tomich plc***, and for their First Amended Verified Complaint against Defendant American Textile Recycling Services ("ATRS" or "Defendant"), state as follows:

## Preamble

This is a civil action wherein PLAINTIFFS SOCIETY OF ST. VINCENT DE PAUL (hereinafter SVdP) and PLANET AID (hereinafter "Planet Aid") (jointly referred to as "Plaintiffs") bring this action to seek damages and injunctive relief from Defendant AMERICAN TEXTILE RECYCLING SERVICES (hereinafter "ATRS"). Plaintiffs both place donation bins on select properties in several Michigan cities after first receiving permission from the property owner or manager. Members of the public place lightly used goods such as clothing, shoes, and other textiles in the bins, and Plaintiffs later donate or resell those used goods to benefit charitable organizations for the needy across the United States and the world.

Over the past year, ATRS, based in Houston, devised, directed, and carried out a fraudulent scheme in violation of the Civil Racketeer Influenced and Corrupt Organizations Act, or RICO. 18 U.S.C. § 1961 et seq. Defendant ATRS teamed with JA Hauling of Jackson, Michigan, owned by James Ball, to form an enterprise. The enterprise, as devised and operated by ATRS from its corporate headquarters in Houston, worked liked this: ATRS would identify locations where it wished to place its own donation bins. If Plaintiffs already had donation bins at those locations, ATRS would seek out the property owners or managers and convince them to sign letters rescinding permission for Plaintiffs to have their bins on those properties. However, in some instances the property owners would not actually rescind such permission.

Regardless, ATRS would draft letters, sometimes fraudulently, then fraudulently photocopy the signatures of property owners when necessary, and send letters through the U.S. mail to Plaintiffs indicating they needed to remove their bins. The letters also fraudulently stated they were from JA Hauling, when in fact ATRS had drafted and sent the letters. ATRS sent the letters on Thursdays so that by time Plaintiffs received them the following week, JA Hauling had already removed the bins, stolen the contents inside, and scrapped the bins for cash. At all times, ATRS directed JA Hauling to actively conceal ATRS' involvement in the enterprise.

ATRS has crossed state lines and used the U.S. mail system to carry out this fraudulent enterprise in violation of the Civil RICO statute. This activity has caused Plaintiffs to incur tens of thousands of dollars in damages. Plaintiffs have brought this action in order to halt the actions of Defendant ATRS, JA Hauling, and the enterprise they have created and continue to operate and has been furthered through use of the U.S. mail system. Defendant plans to remove more of Plaintiffs' donation bins in the coming days and weeks. Plaintiffs seek to recover property and monies that were lost as a direct result of Defendant's creation of and participation in the fraudulent enterprise it created.

## Parties

1.      Plaintiff, Society of St. Vincent De Paul in the Archdiocese of Detroit, is a 501(c)(3) nonprofit organization and Michigan Nonprofit corporation.

2.      Plaintiff Planet Aid is a 501(c)(3) nonprofit organization and a Massachusetts Nonprofit corporation.

3.      Plaintiffs, in order to gather donations of clothes, textiles, and other lightly used goods that ultimately go to benefit families and persons in need in numerous states and countries, place clearly labeled stand-alone donation bins at various private properties throughout Michigan upon obtaining permission from the property or business owner or manager.

4.      Defendant ATRS, based in Houston, Texas, places stand-alone collection bins at various locations throughout several states, including Michigan to gather donations of clothes, textiles, and other lightly used goods.

## Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1332, as this action involves a controversy that exceeds $75,000 in value, and arises between citizens of different states; 18 USC § 1964, which provides a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), including recovery of treble damages and mandatory attorney fees.  This Court has supplemental jurisdiction pursuant to 28 USC § 1367(a) over the state law claims asserted herein as those claims form part of the same case or controversy as the federal questions asserted.

6.     The venue in this action is proper within the Eastern District of Michigan, Southern Division, pursuant to 28 USC § 1391(b), in that (i) Defendant has performed the acts complained of within this judicial district, (ii) Plaintiffs reside or have operations within this judicial district, and (iii) all of the claims asserted by Plaintiffs arose in this judicial district.

## Factual Allegations

### *Plaintiffs' Donation Bins*

7.     Plaintiffs restate the allegations in paragraphs 1 through 6 as if fully restated herein.

8.     SVdP is a charitable organization inspired by Gospel values that leads women and men to join together to grow spiritually in the tradition of its founder,

Blessed Frédéric Ozanam, and patron, St. Vincent de Paul, by offering person-to-person services to those who are needy and suffering.  (***Exhibit 1, SVdP Mission Statement***).

9.     Organized locally, Vincentians witness God's love by embracing all works of charity and justice. The Society collaborates with other people of good will in relieving need and addressing its causes, making no distinction in those served because, in them, Vincentians see the face of Christ.  (***Ex. 1***).

10.    The National Council Office, located in St. Louis, enables the Society to better serve their local communities by creating materials for the spiritual formation of the members, networking information on advocacy and justice issues, and facilitating the response to the needs of those who are poor throughout the world by giving assistance to victims of disasters.  (***Exhibit 2, Affidavit of SVdP***).

11.    One way in which SVdP carries out its mission is that it places donation bins on private property, with permission of the owners or the businesses operating on the property, to be used for purposes of depositing and collecting used clothing, shoes, and other items to ultimately benefit the poor in and around Michigan, as well as other states and eventually other countries.  (***Ex. 2***).

12.    SVdP obtains verbal or written permission from private property owners or the businesses operating on the property, prior to placing the donation bins on the site.  (***Ex. 2***).

13.     Similarly, Planet Aid, based out of Massachusetts and Elk Ridge, Maryland, has placed donation bins in numerous states since 1997 with the goal of collecting used clothing, household goods, and textiles that ultimately are donated to those less fortunate.  (***Exhibit 3, Planet Aid Mission Statement***).

14.     The purpose of every Planet Aid collection bin in Michigan is to collect and recycle used clothing and shoes in order to improve health, aid vulnerable children, and reduce poverty in innumerable communities.  (***Ex. 3***).

15.     Planet Aid asks for and receives permission from a property owner or manager to place its clearly marked and properly maintained collection bin on the owner's property.  (***Exhibit 4, Affidavit of Planet Aid***).

16.     Plaintiffs distribute or resell the used items collected in their donation bins in Michigan to organizations in other states and countries.  (***Ex. 2; Ex. 4***).

17.     As Plaintiffs are nonprofit organizations, all proceeds from such redistribution are used to cover overhead expenses, with the remainder to be donated to charity.  (***Ex. 2; Ex. 4***).

***Donated Clothing Industry***

18.     Reused and recycled clothing, shoes, and other textiles is a billion dollar industry throughout the United States.  (***Exhibit 5, Dec. 30, 2012, USA Today article on donation bins***).

19.     In most instances, a donation bin owner will resell the donated items to national and international organizations and agencies that serve the needy throughout the U.S. and the rest of the world.  (***Ex. 2; Ex. 4***).

20.     In some parts of the country, donation bin owners are in fierce competition to be prominently placed at ideal locations in order to maximize the amount of donations collected.  (***Ex. 2.; Ex. 4***).

21.     This competition has led to reports of underhanded activities, including some bin owners locking shut or even towing away the donation bins of their competitors in order to divert donations to their own organizations.  (***Ex. 6, May 8, 2010, azcentral.com article***).

22.     At some locations, numerous organizations place bins alongside those of their competitors in an effort to entice the maximum amount of donations.  (***Ex. 2; Ex. 4***).

23.     In some locations, there can be five (5) or more donation bins lined up next to each other.  (***Ex. 2; Ex. 4***).

***Defendant Concocts Scheme and Creates Enterprise***

24.     Defendant ATRS is a for-profit company based with its corporate offices located in Houston, Texas.  (***Ex. 7, State Registration***).

25. Defendant places similar donation bins in Phoenix, Los Angeles, and over the past couple of years has placed an increasing number of its bins in Michigan cities. (***Exhibit 8, ATRS Locations***).

26. ATRS takes in donations in several states while attaching the names of well-known nonprofit organizations, such as the Humane Society, to its bins in order to entice more donations from the public, which might presume all of its donations are going to the Humane Society. (***Ex. 8***).

27. Upon information and belief, as Defendant began to increase the number of its bins in Michigan, ATRS explored ways to increase donations to its bins by diverting donations that were going to other organizations that already had a large presence in the state, including Plaintiffs. (***Ex.2; Ex. 4***).

28. ATRS officials in Houston decided to enact a fraudulent scheme whereby it would remove the donation bins of Plaintiffs and other competitors from desired properties and locations and then locate an ATRS bin on the same property by itself in order to maximize donations. (***Ex. 9, Deposition of James Ball***).

29. However, as ATRS knew its actions were fraudulent and underhanded, it would have to conceal its involvement in the scheme to steal and scrap Plaintiffs' donation bins. (***Ex. 9 at 45***).

30.    Thus, ATRS officials in Houston directed its Michigan employees, namely Michael Spath and Patrick Bennett, to orchestrate a scheme by which ATRS would have another person or entity remove the bins of Plaintiffs from select locations and at the direction of ATRS, and in their place put a bin to collect donations for ATRS.  (***Ex. 9***).

31.    All of the directions on how to create, manage, and carryout the scheme came from ATRS leadership in Houston.  (***Ex. 9 at 24; 28-29***).

32.    ATRS representatives would create and manage an enterprise that consisted of ATRS representatives in Houston and Michigan, but the actual removal and scrapping of Plaintiffs' donation bins would be done by a tow truck company in Michigan in order to keep ATRS' involvement concealed.  (***Ex. 9***).

33.    In order to carry out this scheme, ATRS directed tow truck driver James Ball of Jackson, Michigan, to create an assumed business name, JA Hauling, so that Ball could remove the donation bins of Plaintiffs as Defendant wished.  (***Ex. 9 at 8-9***).

34.    Before the enterprise was enacted, ATRS officials from Houston participated in a conference call with Mr. Ball about the details of how the enterprise would work.  (***Ex. 9 at 62***).

35.     In order to encourage Mr. Ball to participate in the enterprise, ATRS promised to defend Mr. Ball and JA Hauling if Plaintiffs ever filed a lawsuit.  (***Ex. 9 at 65***).

36.     ATRS created fake letterhead for JA Hauling, which is not a registered business entity, in order to conceal ATRS' role in the enterprise.  (***Ex. 9 at 8***).

37.     ATRS would identify which locations in Michigan it wished to place its donation bins.  (***Ex. 9***).

38.     If those targeted properties were already occupied by Plaintiffs' donation bins, ATRS employees Spath and Bennett would contact the property owners and offer to remove the Plaintiffs' donation bins free of charge and then place a bin belonging to ATRS at the same location.  (***Ex. 9***).

39.     Once the property owners had signed documents ATRS had drafted indicating the bins should be removed, ATRS would draft and send to Plaintiffs letters, through the U.S. mail, portending to be from JA Hauling on fake letterhead that Defendant had created.  (***Ex. 9 at 26***).

40.     The letters would indicate Plaintiffs had 72 hours to remove their bins from the properties where they were located or the bins would be destroyed.  (***Ex. 9***).

41.     ATRS would strategically send the letters out on Thursdays, so that by the time Plaintiffs received the letters the following Monday or Tuesday, more than 72 hours had already elapsed and JA Hauling would have already stolen Plaintiffs' bins.  (*Ex. 9*).

42.     In order to further delay receipt of the letters, ATRS sent them to SVdP's headquarters in St. Louis, Missouri, and Planet Aid's headquarters in Elk Ridge, Maryland.  (*Ex. 2; Ex. 4*).

43.     Instead of returning the removed bins to Plaintiffs, ATRS directed James Ball to instead take the bins to a recycling facility to have them scrapped.  (*Ex. 9 at 19-21*).

44.     James Ball would be allowed to keep the money from the scrapyard, and ATRS also paid him $150 for each of Plaintiffs' bins that were removed.  (*Ex. 9 at 21*).

45.     Plaintiffs' donation bins, including painting and setup, cost about $1,300 each.  (*Ex. 2; Ex. 4*).

46.     Additionally, ATRS directed Mr. Ball to take the donations in Plaintiffs' bins – goods that otherwise would have been sent to other states– and either give them away to Goodwill or dispose of them.  (*Ex. 9 at 17-19*).

47.     ATRS specifically told Mr. Ball to conceal the role ATRS played in the enterprise at all times, including never telling Plaintiffs about the role of ATRS in every aspect of the enterprise. (***Ex. 9 at 45***).

***Defendant ATRS carries out its enterprise***

48.     On Monday, July 9, 2012, Planet Aid representatives in Michigan emailed Michael Spath of ATRS, asking if ATRS had any idea what happened to the Planet Aid donation bin that had been located at 3001 E. Michigan Ave. in Jackson but was now missing. (***Exhibit 10, July 9, 2012, Email to ATRS***).

49.     The Planet Aid bin had been replaced with three similar donation bins belonging to ATRS. (***Ex. 4***).

50.     Planet Aid had not been made aware o§f any demand by the property owner that Planet Aid needed to remove its Donation Bin. (***Ex. 4***).

51.     In response, Spath said: "I can guarantee you that ATRS does not touch anyone else's boxes. I don't know where any of them are." (***Exhibit 11, July 17, 2012, Email from ATRS***).

52.     However, in October 2012, the enterprise ATRS had hatched in order to steal Plaintiffs' donation bins went into effect. (***Ex. 9 at 38***).

53.     In an Oct. 31, 2012, email, Spath laid out the details of the enterprise's first set of Plaintiffs' donation bins that had been targeted. (***Exhibit 12, Oct. 31, 2012, Email to James Ball***).

54.    In order to carry out the enterprise's activities, ATRS gave JA Hauling a pallet jack that was used to remove Plaintiffs' donation bins.  (***Ex. 9 at 56***).

55.    On November 7, 2012, ATRS sent a letter through the U.S. mail calling for the removal of Planet Aid's Donation Bin outside the Sam's Club at 3600 O'Neill in Jackson.    (***Exhibit 13, Certified Mail receipt; Exhibit 14, November 2, 2012, Authorization for removal***).

56.    The letter fraudulently indicated that it was from JA Hauling when in fact it was sent by ATRS.  (***Ex. 9 at 26; Ex. 14***).

57.    On November 26, 2012, ATRS sent through the U.S. mail a notice to SVdP and Planet Aid to remove their donation bins from Bloomfield Town Square, 2207 S. Telegraph Road, Bloomfield Hills.  (***Exhibit 15, Nov. 27, 2012, Letter to SVdP; Exhibit 16, Nov. 27, 2012, Letter to Planet Aid; Exhibit 17, Nov. 28, 2012, Email from Spath***).

58.    Again, the letters sent through the U.S. mail were fraudulent in that they indicated they were from JA Hauling when in fact they were from ATRS. (***Ex. 9 at 26-27***).

59.    The bins in Jackson and Bloomfield Hills were eventually removed, although SVdP and Planet Aid have no idea where their bins were taken.  (***Ex. 2; Ex. 4; Ex. 9 at 50***).

60.     While ATRS had JA Hauling steal one of its bins from the Bloomfield Hills site, Planet Aid removed a second bin from that location in order to prevent it from also being stolen by Defendant.  (***Ex. 4***).

61.     ATRS paid James Ball for taking Plaintiffs' bins to be scrapped at a local scrapyard, OmniSource.  (***Ex. 9 at 42-43***).

62.     On January 16, 2013, Spath informed JA Hauling of the removal of nine (9) Donation Bins in the Brighton/South Lyon area, and 14 more in Lincoln Park and Roseville.  (***Exhibit 18, Jan. 16, 2013, Spath Email***).

63.     Among those bins in Lincoln Park were those situated at the Lincoln Park Shopping Center 1812 Dix Highway, Lincoln Park, MI, belonging to SVdP.  (***Ex. 2***).

64.     However, the property owner informed Patrick Bennett of ATRS that she would have to rescind her prior permission, including a post-dated removal notice, to remove Plaintiffs' bins from the property until further notice.  (***Exhibit 19, Jan. 17, 2013, Email to ATRS; Exhibit 20, Postdated Removal Notices***).

65.     Patrick Bennett repeatedly attempted to convince the property owner to rescind permission for Plaintiffs to have their bins on the property, but to no avail.  (***Exhibit 21, January 21, 2013, Email from ATRS to Grand Sakwa***).

66.     Despite not hearing back from the property owner, ATRS sent out fraudulent letters through the U.S. mail indicating that SVdP and Planet Aid had to

14

remove their bins from the Lincoln Park Shopping Center even though ATRS knew that was not true.  (***Exhibit 22, Letter to SVdP; Exhibit 23, Letter to Planet Aid; Ex. 9***).

67.    Upon information and belief, ATRS fraudulently photocopied the signature of the Lincoln Park property owner or manager onto additional removal documents, which were then sent to Plaintiffs through the U.S. mail.  (***Ex. 9; Ex. 22; Ex. 23***).

68.    JA Hauling, at the direction of ATRS, eventually removed the donation bins belonging to SVdP from the Lincoln Park Shopping Center.  (***Ex. 9***).

69.    SVdP does not know the whereabouts of its bins or the donated goods contained therein.  (***Ex. 2***).

70.    On February 21, 2013, Spath informed JA Hauling that ATRS had targeted Planet Aid donation bins in Milford (510 Highland Avenue) and Lincoln Park.  (***Exhibit 24, Feb. 21, 2013, Email from ATRS***).

71.    In fact, the previous day, another ATRS employee had told JA Hauling that Planet Aid had just placed a donation bin in Milford and ATRS had already sent a letter through the mail to fraudulently inform Planet Aid that the bin had to be removed.  (***Exhibit 25, February 20, 2013, Email***).

72.    Neither SVdP nor Planet Aid knows the whereabouts of those bins or the donated contents contained therein.  (***Ex. 2; Ex. 4***).

73.     By March 2013, ATRS and JA Hauling were aware that Milford Police had been looking into their enterprise and whether donation bins had been improperly taken from a property in Milford.  (*Exhibit 26, March 5, 2012, Email*).

74.     After James Ball told Spath that everything was fine, Spath wrote back:  "Hope that alleviates some of your fears….told you we knew what we were doing."  (*Exhibit 27, March 6, 2013, Email*).

75.     Thus, the enterprise continued later that month, as ATRS used the U.S. mail system to send additional fraudulent letters to SVdP in furtherance of the enterprise, indicating SVdP had to remove their donation bins from South Allen Shopping Center, 15411 Southfield Road, Allen Park.  (*Exhibit 28, JA Hauling Paperwork dated March 12, 2013*).

76.     On or about April 1, 2013, SVdP learned from one of its drivers that its donation bin located at Thunderbowl Lanes, 4200 Allen Road, Allen Park, had been removed and all that was left remaining was the cutoff locks.  (*Ex. 2; Ex. 9 at 18; Exhibit 29, Pictures*).

77.     A number of days after the bins had been removed, SVdP received a letter in the U.S. mail that fraudulently indicated it was from JA Hauling when in fact it was from ATRS (*Ex. 2; Exhibit 30, Thunderbowl LanesLetter*).

78.    The letter fraudulently stated that the donation bins were placed without proper authorization and providing SVdP had 72 hours to remove the bin from the Thunderbowl Lanes location. (***Exhibit 2, Ex. 30***)

79.    The above referenced letter was sent to SVdP headquarters in St. Louis, MO, and by the time the Detroit headquarters received the letter, JA Hauling had already removed the bins.  (***Ex. 2***).

80.    SVdP contacted Thunderbowl Lanes, who confirmed that SVdP had permission to place its donation bins on the property.  (***Ex. 2***).

81.    In fact, Thunderbowl Lanes permitted SVdP to place a replacement bin on the property now that ATRS had fraudulently stolen the previous one.  (***Ex. 2***).

82.    To date, SVdP does not know the whereabouts of the donation bin it had previously put at Thunderbowl Lanes.  (***Ex. 2***).

83.    On or about April 3, 2013, a representative from SVdP, Larry Griffin, informed Mr. Ball that SVdP never received calls from JA Hauling, as claimed in the fraudulent letters ATRS had sent under JA Hauling letterhead through the U.S. mail.  (***Ex. 2; Ex. 9 at 46-47***).

84.    Mr. Griffin also informed JA Hauling of the value of the bins and their contents, and should JA Hauling be asked to remove SVdP's bins in the

future, to contact Mr. Griffin directly and SVdP would remove the bins immediately.  (*Ex. 2*).

85.    Thereafter, SVdP received numerous letters from JA Hauling calling for SVdP to remove its donation bins from a variety of locations throughout Michigan.  (*Ex. 2*).

86.    However, JA Hauling disregarded the agreement to contact SVdP prior to removing the bins and continued to remove SVdP's bins from their locations at the direction of ATRS.  (*Ex. 2; Ex. 9 at 46-47*).

87.    In fact, Mr. Ball told ATRS that SVdP requested that their donation bins be returned to SVdP instead of scrapped, but ATRS ordered Mr. Ball to scrap SVdP's bins anyways.  (*Ex. 9 at 47*).

88.    On or about May 14, 2013, SVdP's counsel sent JA Hauling a cease and desist letter requesting that it return all of SVdP's bins that the company had removed; no response was given.  (*Exhibit 31, Cease and Desist Letter*).

89.    Planet Aid also sent a cease and desist letter to JA Hauling.  (*Ex. 4*).

90.    Mr. Ball gave the letter to ATRS, but the ATRS representative in Michigan assured Mr. Ball the letter was a "scare tactic."  (*Ex. 9 at 34*).

91.    Thereafter, on or about June 18, 2013, Plaintiffs received letters ATRS sent through the U.S. mail that fraudulently indicated that it was from JA

Hauling regarding the bins Plaintiffs had placed at the CVS on 66 E. Walton, Pontiac, Michigan. (***Exhibit 32, CVS Pontiac letter***).

92.     SVdP sent the CVS at this location a certified letter on 6/3/13 inquiring as to whether or not they wished to continue the bin site agreement. (***Exhibit 33, Permission Agreement***).

93.     To date, SVdP had not received a response. (***Ex. 2***).

94.     Sometime between July 5, 2013 and July 10, 2013, bins belonging to SVdP and Planet Aid at the CVS located at 66 E. Walton, Pontiac were removed. (***Ex. 2; Ex. 34, Pictures from CVS***).

95.     SVdP filed a report with the Oakland County Sheriff's Office, and Deputy McCann issued a report, Incident No. 13-111163. (***Ex. 2***).

96.     Planet Aid also filed a report with the Oakland County Sheriff's Office. (***Ex. 4***).

97.     Coincidentally, soon after Plaintiffs' bins are removed, bins owned and operated by ATRS appear on the very same sites. (***Ex. 2; Ex. 4***)

98.     The donation bins that JA Hauling has removed, as well as the contents contained therein, have never been found or returned to SVdP or Planet Aid, their rightful owners. (***Ex. 2; Ex. 4***).

99.     ATRS sent checks through the U.S. mail from its corporate office in Houston to Mr. Ball to pay for his covert work. (***Ex. 9 at 14, 24***).

100.   As part of the enterprise, ATRS permitted James Ball to keep the $30-$40 generated from scrapping Plaintiffs' donation bins at OmniSource.  (***Ex. 9 at 20-21***).

101.   In order to conceal its role in the enterprise, ATRS took several affirmative steps

102.   ATRS did not want JA Hauling to bring Plaintiffs' donation bins to ATRS, instead directing Mr. Ball to immediately scrap Plaintiffs' donation bins even though no property owner requested such action.  (***Ex. 9 at 20***).

103.   Additionally, ATRS sent out all of the letters through the U.S. mail fraudulently indicating the letters were from JA Hauling.  (***Ex. 9 at 25-27***).

104.   Also, in order to conceal the activities of the enterprise, ATRS directed Mr. Ball to write "garbage removal" on his invoices and specifically refrain from indicating he had disposed of Plaintiffs' donation bins.  (***Ex. 9 at 21; 51-52***).

105.   SVdP and Planet Aid collect the contents of their donation bins on a weekly basis, with the weekly collection from the bins Defendant stole totaling between 350-400 pounds of clothes and shoes on average.  (***Ex. 2; Ex. 4***).

106.   SVdP and Planet Aid have been denied the opportunity to continue collecting materials in their bins that have already been removed and scrapped by

JA Hauling as part of the ongoing fraudulent scheme formulated and carried out by ATRS.  (*Ex. 2; Ex. 4*).

107.   ATRS has asked JA Hauling to remove and scrap more of Plaintiffs' bins in the comings weeks.  (*Ex. 9 at 37*).

## COUNT I
### *CIVIL RICO 18 U.S.C. § 1962(c)*

108.   Plaintiffs reference paragraphs 1 through 107 as if fully restated herein.

109.   Section 1962(c) of Title 18 of the United States Code prohibits any person from conducting an enterprise or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.  Section 1964(d) of Title 18 provides that "[a]ny person injured in his business or property by reason of a violation of section 1962…may sue therefor in any appropriate United States district court."

110.   As alleged in paragraphs 1 through 107, Defendant ATRS and JA Hauling formed an enterprise engaged in activities that directly affect interstate commerce.

111.   Defendant ATRS created, agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs.  Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property. (***Exhibit 19, Jan. 17, 2013, Email to ATRS; Exhibit 20, Postdated Removal Notices***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property. (***Ex. 2; Ex. 9***).  The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along. (***Ex. 2***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise. (***Ex. 32; Ex. 33; Ex. 2; Ex. 4***).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS.  (***Ex. 9 at 26, 28***).

112.   Pursuant to and in furtherance of the fraudulent scheme and enterprise, Defendant committed multiple related acts of mail fraud.

113.   The acts set forth above, which took place over nine (9) months in at least five (5) Michigan cities and led to the improper removal of more than 12 of

Plaintiffs' donation bins as enabled by the repeated and ongoing use of the U.S. mail system, constitute a pattern of racketeering activity pursuant to 18 U.S. C. § 1961(5).

114.   Defendant has directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

115.   As a direct and proximate result of the Defendant's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that the enterprise and directly and proximately caused Plaintiffs to be deprived of their donations bins, which were scrapped as part of the enterprise, and the donated contents therein, which Plaintiffs would have also benefitted from economically.

116.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

## COUNT II
### RICO SECTION 1962(b)

117.   Plaintiffs reference paragraphs 1 through 116 as if fully restated herein.

118.   Defendant ATRS and JA Hauling, owned and operated by James Bell, created an enterprise engaged in activities that directly affect interstate commerce.

119.   Defendant created, maintained and has direct economic interests in and control over the enterprise through a pattern of racketeering activity. Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property. (***Exhibit 19, Jan. 17, 2013, Email to ATRS; Exhibit 20, Postdated Removal Notices***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property. (***Ex. 2; Ex. 9***). The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along. (***Ex. 2***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods

24

contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise. (***Ex. 32; Ex. 33; Ex. 2; Ex. 4***).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS. (***Ex. 9 at 26, 28***).

120.   Defendant maintained control over the enterprise through the use of dozens of emails and letters sent through the U.S. Mail. (***Ex. 9 at 26, 28; Exs. 10-18; Exs. 22-27***).

121.   The mail fraud referenced herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

122.   Defendant has directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. 1962(b).

123.   As a direct and proximate result of the Defendant's racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property in that the enterprise directly and proximately caused Plaintiffs to be deprived of their donations bins, which were scrapped as part of the enterprise, and the donated contents therein, which Plaintiffs would have also benefitted from economically.

124.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

## COUNT III
### *RICO SECTION 1962(d)*

125.   Plaintiffs reference paragraphs 1 through 124 as if fully restated herein.

126.   As set forth above, Defendant agreed and conspired to violate 18 U.S.C. §§ 1962(b) and (c).  Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property. (***Exhibit 19, Jan. 17, 2013, Email to ATRS; Exhibit 20, Postdated Removal Notices***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property.  (***Ex. 2; Ex. 9***).  The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along.  (***Ex. 2***).

26

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise.  (***Ex. 32; Ex. 33; Ex. 2; Ex. 4***).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS.  (***Ex. 9 at 26, 28***).

127.   Defendant has intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

128.   Defendant knew its predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above.   That conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962 (b) and (c), in violation of 18 U.S.C. § 1962(d).

129.   As a direct and proximate result of the Defendant's conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that

130.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

### COUNT IV
### *TRESPASS TO CHATTELS*

131.   Plaintiffs restate the allegations in paragraphs 1 through 130 as if fully restated herein.

132.   Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford.  (***Ex. 2, Ex. 4***).

133.   SVdP's and Planet Aid's donation bins were clearly marked as to identify the owner of the bins, which were properly located on private property with permission of landlords and/or on site managers of the businesses otherwise occupying the locations.

134.   Defendant ATRS wrongfully directed JA Hauling to exercise dominion or control over the Plaintiffs' donation bins and their contents by telling JA Hauling which Donation Bins belonging to Plaintiffs to remove and dispose of so that ATRS could then locate its own bins at select locations.   (***Ex. 9 at 25-28***).

135.   The removal of SVdP's and Planet Aid's donation bins constitutes a trespass to chattels, as coordinated and directed by Defendant ATRS, since JA Hauling has wrongfully exercised dominion and control over SVdP's and Planet Aid's donation bins and Defendant ATRS has wrongfully exercised dominion and control over goods donated to SVdP's and Planet Aid's donation bins and refuses to return the missing property or allow Plaintiffs to know the location of the property. *See Burns v Kirkpatrick*, 91 Mich 364; 51 NW 893 (1892).

136.   Plaintiffs suffered damages in excess of $75,000 when Defendant discarded Plaintiffs' donation bins and their contents over this period of time.

**COUNT V**
*CONVERSION*

137.   Plaintiffs restate the allegations in paragraphs 1 through 136 as if fully restated herein.

138.   Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford.  (***Ex. 2, Ex. 4***).

139.   SVdP's and Planet Aid's donation bins were clearly marked as to identify the owner of the bins, which were properly located on private property with permission of landlords and/or on site managers of the business.

140.   Defendant directed and assisted JA Hauling's continued wrongful possession of Plaintiffs' donation bins and their contents, which is conversion

under Michigan law, as ATRS has wrongfully exerted control over Plaintiffs' property and has denied Plaintiffs the right to possess their property. *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999); MCL 600.2919a.

141. Plaintiffs suffered damages in excess of $75,000 when Defendant removed the donation bins and the contents over this period of time.

## COUNT VI
### STATUTORY CONVERSION (MCL §600.2919a)

142. Plaintiffs restate the allegations in paragraphs 1 through 141 as if fully restated herein.

143. Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford. (**Ex. 2, Ex. 4**).

144. Plaintiffs' donation bins were clearly marked as to identify the owner of the bins and properly located on private property with permission of landlords and/or on site managers of the business.

145. Defendant ATRS' and JA Hauling's removal of Plaintiffs' donation bins from sites where it had lawful permission to operate constitutes stealing and conversion of the bins and the goods contained therein for the use of Defendant.

146.   Defendant's conduct constitutes a violation of MCL §600.2919(a), Michigan's statutory conversion claim, in the Defendant stole or converted Plaintiffs' property to Defendant's own use or benefit.

147.   Mich. Comp. Laws § 600.2919a(1) further provides that a person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees.

## COUNT VII
### CLAIM AND DELIVERY

148.   Plaintiffs restate the allegations in paragraphs 1 through 147 as if fully restated herein.

149.   Defendant directed JA Hauling to unlawfully remove and detain Plaintiffs' donation bins and the goods contained therein, or otherwise recycle same.

150.   As result of Defendant's actions and directions to JA Hauling, Plaintiffs have suffered damages in excess of $75,000.

151.   Pursuant to MCL 600.2920(1), Plaintiffs are entitled to recover their donation bins and donated goods that have been taken from them at Defendant's direction.

152.   Plaintiffs are also entitled to recover damages sustained by the unlawful taking and detention of their property.

153.   Plaintiffs request that their possessions, including their donation bins and their contents, be recovered and damages be awarded in excess of $75,000 to recover the damages incurred during the time period Plaintiffs' bins were not in place.

154.   Plaintiffs respectfully request that the Court order the Defendant to return the property; or in the alternative if the property is kept by Defendant, order that the property not be destroyed and order Defendant to post a bond in the amount of $75,000 or promise to pay more than the value of the property if destroyed.

## COUNT VIII
### *Tortious Interference with Business Relationship*

155.   Plaintiffs restate the allegations paragraphs 1 through 154 as if fully restated herein.

156.   Plaintiffs had permission from various independent business owners that allowed Plaintiffs to place their donation bins on the business owners' private property.

157.   Based on this permission, Plaintiffs had a reasonable business expectancy that they would be allowed to maintain their donation bins at these locations and derive economic gain on a weekly basis.

158.   Defendant had knowledge of Plaintiffs' business expectancy.

159.    Defendant intentionally and improperly interfered with Plaintiffs' business expectancy by actively contacting the owners of the properties where Plaintiffs' donation bins were located and offering to remove the bins free of charge.

160.    Defendant's intentional and improper interference caused a breach or termination of Plaintiffs' expectancy.

161.    Defendant's intentional and improper interference with Plaintiffs' business expectancy has damaged Plaintiffs in an amount in excess of $75,000.

## Relief Requested

WHEREFORE, Plaintiffs pray for a judgment against Defendant ATRS and that this Honorable Court:

a.    Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

b.    Pursuant to 28 USC § 2202, Fed. R. Civ. Pro. 65, 18 U.S.C. 1964(c) award Plaintiff exemplary, compensatory and nominal damages, as well as treble damages;

c.    Pursuant to 18 USC § 1964 (c) and other applicable law, award Plaintiffs their reasonable attorney fees, costs; and

d.    Grant such other and further relief as the Court deems equitable, just and proper.

Dated:  September 19, 2013

Respectfully Submitted,

**DALTON & TOMICH, plc**

By:/s/ Daniel P. Dalton
Attorney for Plaintiffs
41000 Woodward Ave., Ste. 345 East
Bloomfield Hills, MI 48304
(248) 971-2400
(248) 971-1906 (Fax)
ddalton@daltontomich.com

## Verification

Pursuant to 28 USC § 1746, I _____ declare under penalty of perjury that I have personal knowledge of matters contained in paragraphs 7-94 of this Verified Complaint and that the allegations contained therein are true and accurate.

Executed this __18__ day of __September__ 2013

St. Vincent de Paul

By: _____

Its: _____EXECUTIVE DIRECTOR_____

Planet Aid

By: _____

Its: _____Operations Manager_____

## Verification

Pursuant to 28 USC § 1746, I, declare under penalty of perjury that I have personal knowledge of matters contained in paragraphs 7-107 of this Verified Complaint and that the allegations contained therein are true and accurate.

Executed this _18th_ day of _September_, 2013

Planet Aid

By: _[signature]_

Its: _Regional Mng._

**Demand for Trial by Jury**

The Plaintiffs herein demand a trial by jury in this cause of action.

Respectfully Submitted,

**DALTON & TOMICH, plc**

By:/s/ Daniel P. Dalton
Attorney for Plaintiffs
41000 Woodward Ave., Ste. 345 East
Bloomfield Hills, MI 48304
(248) 971-2400
(248) 971-1906 (Fax)
ddalton@daltontomich.com

Dated:  September 19, 2013

**Certificate of Service**

I HEREBY CERTIFY that I have on this 19th day of September, 2013, served a copy of the foregoing on counsel for all parties to this proceeding by operation of the Court's CM/ECF system.

 /s/ Daniel P. Dalton
Attorney for Plaintiff