## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SOCIETY OF ST. VINCENT DE PAUL IN THE ARCHDIOCESE OF DETROIT**, a Michigan Nonprofit Corporation, **PLANET AID**, a Massachusetts Nonprofit Corporation, and the **INSTITUTE FOR INTERNATIONAL COOPERATION AND DEVELOPMENT, MICHIGAN**, a Michigan Nonprofit Corporation,

       Plaintiffs,

v.

**A.T.R.S., Inc.,** a Texas Corporation, d/b/a American Textile Recycling Services,

       Defendant.

HON.  Denise Page Hood
Case No.  2:13-cv-14004-DPH-LJM

---

**DALTON & TOMICH plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiffs
41000 Woodward Ave. Ste 345 East
Bloomfield Hills MI 48304
Tel. (248) 971-2400
Fax (248) 971-1906
ddalton@daltontomich.com

---

## THIRD AMENDED VERIFIED COMPLAINT

NOW COMES the Plaintiffs, Society of St. Vincent de Paul in the Archdiocese of Detroit ("SVdP"), Planet Aid, and the Institute for International Cooperation and Development Michigan ("IICD") jointly referred to herein as "Plaintiffs") by and through their attorneys, **Dalton & Tomich plc**, and for their

*Third* Amended Verified Complaint against Defendant A.T.R.S., Inc., d/b/a American Textile Recycling Services ("ATRS" or "Defendant"), state as follows:

## Preamble

This is a civil action wherein PLAINTIFFS SOCIETY OF ST. VINCENT DE PAUL (hereinafter "SVdP") PLANET AID (hereinafter "Planet Aid"), and the INSTITUTE FOR INTERNATIONAL COOPERATION AND DEVELOPMENT MICHIGAN (hereinafter "IICD") (jointly referred to hereinafter as "Plaintiffs") bring this action seeking damages and injunctive relief from Defendant A.T.R.S., INC., a Texas corporation doing business as AMERICAN TEXTILE RECYCLING SERVICES (hereinafter "Defendant" or "ATRS"). Plaintiffs place donation bins on select properties in several Michigan cities after first receiving permission from the property owner or manager. Members of the public place lightly used goods such as clothing, shoes, and other textiles in the clearly marked bins. Plaintiffs later donate or resell those used goods to benefit charitable organizations for the needy across Michigan, the United States and the world.

Over the past year, ATRS, based in Houston, Texas, devised, directed, and carried out a fraudulent scheme in violation of the Civil Racketeer Influenced and Corrupt Organizations Act, or RICO. 18 U.S.C. § 1961 et seq. ATRS also collects used clothing in donation bins placed on select properties, and ATRS was in direct competition with Plaintiffs and sought to increase donations to its bins. Thus, Defendant ATRS teamed with James Ball of Jackson, Michigan to form an enterprise that would be carried out by an unincorporated business operating under an assumed name, JA Hauling. The enterprise, as devised and operated by ATRS from its corporate headquarters in Houston, worked liked this: ATRS would identify locations where it wished to place its own donation bins. If Plaintiffs already had donation bins at those locations, ATRS would seek out the property owners or managers and convince them to sign letters rescinding permission for Plaintiffs to have their bins on those properties. However, in some instances the property owners would not actually revoke such permission for Plaintiffs.

2

Regardless, ATRS would draft letters, sometimes fraudulently, then fraudulently photocopy the signatures of property owners when necessary, and send letters through the U.S. mail to Plaintiffs indicating they needed to remove their bins. The letters also fraudulently stated they were from JA Hauling, when in fact ATRS had drafted and sent the letters through the U.S. mail. In most instances, ATRS intentionally sent the letters on Thursdays so that by the time Plaintiffs received them the following week, JA Hauling had already removed the bins, stolen the contents inside, and scrapped the bins for cash or dumped them elsewhere. At all times, ATRS directed Mr. Ball to actively conceal ATRS' involvement in JA Hauling and the enterprise. In exchange for Mr. Ball's participation in the enterprise, ATRS paid him $150 for each bin of Plaintiffs that he removed and scrapped. ATRS sent checks from Houston through the U.S. mail in order to pay Mr. Ball, who would submit fraudulent invoices to ATRS that concealed that he was seeking payment for stealing Plaintiffs' donation bins.

ATRS has crossed state lines and used the U.S. mail system to carry out and further this fraudulent enterprise that interferes with interstate and international commerce, in violation of the Civil RICO statute. This activity has caused Plaintiffs to incur tens of thousands of dollars in damages based on the stolen donation bins, the donated items contained therein, and in lost donations after the bins were stolen. Plaintiffs have brought this action in order to halt the actions of ATRS and the enterprise it created, JA Hauling, and furthered through use of the U.S. mail system. Defendant plans to remove more of Plaintiffs' donation bins in the coming days and weeks. Plaintiffs seek to recover their property and monies that were lost as a direct result of Defendant's creation of and participation in this fraudulent enterprise.

## Parties

1.      Plaintiff Society of St. Vincent De Paul in the Archdiocese of Detroit is a Michigan nonprofit corporation.

2.      Plaintiff Planet Aid is a Massachusetts nonprofit corporation.

3.     Plaintiff Institute for International Cooperation and Development Michigan is a Michigan nonprofit corporation.

4.     Plaintiffs, in order to gather donations of clothes, textiles, and other lightly used goods that ultimately go to benefit families and persons in need in Michigan, numerous other states and other countries, place clearly labeled stand-alone donation bins at various private properties throughout Michigan upon obtaining permission from the property or business owner or manager.

5.     Defendant ATRS, a for profit corporation based in Houston, Texas, places stand-alone collection bins at various locations throughout several states, including Michigan, to gather donations of clothes, textiles, and other lightly used goods.

## Jurisdiction and Venue

6.     This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1332, as this action involves a controversy that exceeds $75,000 in value, and arises between citizens of different states; 18 USC § 1964, which provides a civil cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), including recovery of treble damages and mandatory attorney fees.  This Court has supplemental jurisdiction pursuant to 28 USC § 1367(a) over the state law claims asserted herein as those claims form part of the same case or controversy as the federal questions asserted.

7.     The venue in this action is proper within the Eastern District of Michigan, Southern Division, pursuant to 28 USC § 1391(b), in that (i) Defendant has performed the acts complained of within this judicial district, (ii) Plaintiffs reside or have operations within this judicial district, and (iii) all of the claims asserted by Plaintiffs arose in this judicial district.

## Factual Allegations

### Plaintiffs' Donation Bins

8.     Plaintiffs restate the allegations in paragraphs 1 through 7 as if fully restated herein.

9.     SVdP is a charitable organization inspired by Gospel values that leads women and men to join together to grow spiritually in the tradition of its founder, Blessed Frédéric Ozanam, and patron, St. Vincent de Paul, by offering person-to-person services to those who are needy and suffering.  (***Exhibit 1, SVdP Mission Statement***).

10.     Organized locally, Vincentians witness God's love by embracing all works of charity and justice. The Society collaborates with other people of good will in relieving need and addressing its causes, making no distinction in those served because, in them, Vincentians see the face of Christ.  (***Ex. 1***).

11.     The National Council Office, located in St. Louis, enables SVdP to better serve their local communities by creating materials for the spiritual

formation of the members, networking information on advocacy and justice issues, and facilitating the response to the needs of those who are poor throughout the world by giving assistance to victims of disasters.  (***Exhibit 2, Affidavit of SVdP***).

12.     One way in which SVdP carries out its mission is that it places donation bins on private property, with permission of the owners or the businesses operating on the property, to be used for purposes of depositing and collecting used clothing, shoes, and other items to ultimately benefit the poor in and around Michigan, as well as other states and, in some cases, other countries.  (***Ex. 2***).

13.     SVdP obtains verbal or written permission from private property owners or the businesses operating on the property, prior to placing the donation bins on the site.  (***Ex. 2***).

14.     Similarly, Planet Aid, based out of Massachusetts and Elk Ridge, Maryland, has placed donation bins in numerous states since 1997 with the goal of collecting used clothing, household goods, and textiles that ultimately are donated to those less fortunate.  (***Exhibit 3, Planet Aid Mission Statement***).

15.     The purpose of every Planet Aid collection bin in Michigan is to collect and recycle used clothing and shoes in order to improve health, aid vulnerable children, and reduce poverty in innumerable communities.  (***Ex. 3***).

16.     Planet Aid asks for and receives permission from a property owner or manager to place its clearly marked and properly maintained collection bin on the owner's property.  (***Exhibit 4, Affidavit of Planet Aid***).

17.     Plaintiff IICD seeks to simultaneously offer aid to the poor while also addressing environmental issues.  (***Exhibit 5, IICD Mission Statement***).

18.     As part of that mission, IICD places donation bins in several Michigan communities to collect and recycle used clothing and shoes in order to improve health, aid vulnerable children, and reduce poverty in Southern Africa, which is where many of the donations to IICD are ultimately distributed.  (***Ex. 5***).

19.     IICD asks for and receives permission from a property owner or manager to place its clearly marked and properly maintained collection bin on the owner's property.  (***Exhibit 6, IICD Affidavit***).

20.     Plaintiffs distribute or resell the items collected in their donation bins in Michigan to organizations in other states and countries.  (***Ex. 2; Ex. 4; Ex. 6***).

21.     As Plaintiffs are nonprofit organizations, all proceeds from such redistribution are used to cover overhead expenses, with the remainder to be donated to charity.  (***Ex. 2; Ex. 4; Ex. 6***).

***Donation Bin Industry***

22.     Donation bins and the used goods they collect are a billion-dollar industry throughout the U.S.  (***Exhibit 7, Dec. 30, 2012, USA Today Article***).

7

23.     In most instances, a donation bin owner will resell the donated items to national and international organizations and agencies that serve the needy throughout the U.S. and the rest of the world.  (*Ex. 2; Ex. 4; Ex. 6*).

24.     In some parts of the country, donation bin owners are in fierce competition with each other to be prominently placed at ideal locations in order to maximize the amount of donations collected.  (*Ex. 2; Ex. 4; Ex. 6*).

25.     This competition has led to reports of underhanded activities, including some bin owners locking shut or even towing away the donation bins of their competitors in order to divert donations to their own organizations.  (*Ex. 8, May 8, 2010, azcentral.com article*).

26.     At some locations, numerous organizations place bins alongside those of their competitors in an effort to entice the maximum amount of donations.  (*Ex. 2; Ex. 4; Ex. 6*).

27.     In some locations, there can be five (5) or more donation bins lined up next to each other.  (*Ex. 2; Ex. 4; Ex. 6*).

**Defendant Concocts Scheme and Creates Enterprise**

28.     Defendant ATRS is a for-profit company with its corporate offices located in Houston, Texas.  (*Ex. 9, ATRS State Registration*).

29.     Defendant places similar donation bins in Phoenix, Los Angeles, and over the past couple of years has placed an increasing number of its bins in Michigan cities.  (*Exhibit 10, ATRS Locations*).

30.     ATRS takes in donations in several states while attaching the names of well-known nonprofit organizations, such as the Michigan Humane Society, to its bins in order to entice more donations from the public, which might presume all of its donations are going to the Humane Society.  (*Ex. 10*).

31.     Upon information and belief, as Defendant began to increase the number of its bins in Michigan, ATRS explored ways to increase donations to its bins by diverting donations that were going to other organizations that already had a large presence in the state, including Plaintiffs.

32.     ATRS officials in Houston decided to enact and actively participate in a fraudulent enterprise whereby the enterprise would remove the donation bins of Plaintiffs and other competitors from desired properties and locations in Michigan and then locate an ATRS bin on the same property by itself in order to maximize donations.  (*Ex. 11, Deposition of James Ball at 19, 24, 62*).

33.     However, as ATRS knew its actions were fraudulent and underhanded, it would have to conceal its involvement in the scheme to steal and scrap Plaintiffs' donation bins and those of other competitors.  (*Ex. 11 at 45*).

34.     Thus, ATRS officials in Houston directed its Michigan employees, namely Michael Spath and Patrick Bennett, to create an enterprise by which ATRS would have another person or entity remove the bins of Plaintiffs from select locations and in their place put a bin to collect donations for ATRS. (***Ex. 11 at 19, 24, 62***).

35.     All of the directions on how to create, manage, and carry out the enterprise came from ATRS leadership in Houston. (***Ex. 11 at 24, 28-29***).

36.     In fact, ATRS had experience in creating such enterprises, as it had done something similar in order to steal and dispose of competitors' donation bins in Phoenix in 2010. (***Exhibit 12, Nov. 16, 2010, azfamily.com article***).

37.     In order to carry out this scheme, ATRS worked with tow truck driver James Ball of Jackson, Michigan, to create an assumed business name, JA Hauling, that would serve as the front of the enterprise, which would involve Ball removing the donation bins of Plaintiffs as Defendant requested. (***Ex. 11 at 8-9***).

38.     ATRS officials from Houston participated in a conference call with Mr. Ball about the details of how the enterprise would work. (***Ex. 11 at 62***).

39.     In order to encourage Mr. Ball to participate in the enterprise, ATRS promised to defend Mr. Ball and JA Hauling if Plaintiffs ever filed a lawsuit. (***Ex. 11 at 65***).

40.    ATRS had previously operated this scheme in Michigan as part of a prior enterprise with a separate tow truck driver from Ohio.  (***Ex. 11 at 9, 63***).

41.    ATRS created fake letterhead for JA Hauling in order to conceal ATRS' role in the enterprise.  (***Ex. 11 at 8***).

42.    ATRS would identify which locations in Michigan it wished to place its donation bins.  (***Ex. 11***).

43.    If those targeted properties were already occupied by Plaintiffs' donation bins, ATRS employees Spath and Bennett would contact the property owners and offer to remove the Plaintiffs' donation bins free of charge and then place a bin belonging to ATRS at the same location.  (***Ex. 11 at 8***).

44.    Once the property owners had signed documents ATRS had drafted indicating the bins should be removed, ATRS would draft and send to Plaintiffs letters, through the U.S. mail, portending to be from JA Hauling on fake letterhead that Defendant had created.  (***Ex. 11 at 26***).

45.    The letters would indicate Plaintiffs had 72 hours to remove their bins from the properties where they were located or the bins would be destroyed.  (***Ex. 11 at 12***).

46.    Upon information and belief, ATRS would strategically send the letters out on Thursdays, so that by the time Plaintiffs received the letters the

following Monday or Tuesday, more than 72 hours had already elapsed and JA Hauling would have already stolen Plaintiffs' bins. (*Ex. 2; Ex. 4; Ex. 6*).

47. In order to further delay receipt of the letters, ATRS sent the correspondence through the U.S. mail to SVdP's headquarters in St. Louis, Missouri, Planet Aid's headquarters in Elk Ridge, Maryland, and IICD headquarters in Williamston, Massachusetts. (*Ex. 2; Ex. 4; Ex. 6*).

48. Instead of returning the removed bins to Plaintiffs, ATRS directed James Ball to instead take the bins to a recycling facility to have them scrapped. (*Ex. 11 at 19-21*).

49. James Ball would be allowed to keep the money from the scrapyard, and ATRS also paid him $150 for each of Plaintiffs' bins that were removed. (*Ex. 11 at 21*).

50. Plaintiffs' donation bins, including painting and setup, cost about $1,300 each. (*Ex. 2; Ex. 4; Ex. 6*).

51. Additionally, ATRS directed Mr. Ball to take the donations in Plaintiffs' bins – goods that otherwise would have been sent to other states– and either put them in ATRS donation bins or give them away to Goodwill or dispose of them. (*Ex. 11 at 17-19*).

52.     ATRS specifically told Mr. Ball to conceal the role ATRS played in the enterprise at all times, including never telling Plaintiffs about the role of ATRS in every aspect of the enterprise.  (***Ex. 11 at 45***).

53.     All of the activities of the enterprise were carried out and executed by JA Hauling, an unincorporated business entity that was created at the direction of ATRS and aided by James Ball in order to steal and scrap Plaintiffs' donation bins and the contents contained within Plaintiffs' donation bins in numerous cities across Michigan.

***Defendant ATRS carries out its enterprise***

54.     On Monday, July 9, 2012, Planet Aid representatives in Michigan emailed Michael Spath of ATRS, asking if ATRS had any idea what happened to the Planet Aid donation bin that had been located at 3001 E. Michigan Ave. in Jackson but was now missing.  (***Exhibit 13, July 9, 2012, Email to ATRS***).

55.     The Planet Aid bin had been replaced with three similar donation bins belonging to ATRS.  (***Ex. 4***).

56.     Planet Aid had not been made aware of any demand by the property owner that Planet Aid needed to remove its Donation Bin.  (***Ex. 4***).

57.     In response, Spath said:  "I can guarantee you that ATRS does not touch anyone else's boxes.  I don't know where any of them are."  (***Exhibit 14, July 17, 2012, Email from ATRS***).

58.     Planet Aid has never recovered its donation bin that went missing from 3001 E. Michigan Ave. in Jackson.  (*Ex. 4*).

59.     By October 2012, the enterprise ATRS had hatched in order to steal Plaintiffs' donation bins went into full effect. (*Ex. 11 at 38*).

60.     In an Oct. 31, 2012, email, Spath laid out the details of the enterprise's first set of Plaintiffs' donation bins that had been targeted by ATRS. (*Exhibit 15, Oct. 31, 2012, Email to James Ball*).

61.     In order to carry out the enterprise's activities, ATRS gave James Ball a pallet jack JA Hauling could use to remove Plaintiffs' donation bins.  (*Ex. 11 at 56*).

62.     On or about November 7, 2012, ATRS sent a letter through the U.S. mail calling for the removal of Planet Aid's donation bin outside the Sam's Club at 3600 O'Neill in Jackson, Michigan.   (*Exhibit 16, Planet Aid Certified Mail receipt; Exhibit 17, November 2, 2012, Authorization for removal*).

63.     The letter fraudulently indicated that it was from JA Hauling when in fact it was sent by ATRS. (*Ex. 17; Ex. 11 at 26*).

64.     Similarly, IICD was informed in a letter Defendant sent through the U.S. mail that its donation bin at the same location was also no longer permitted and needed to be removed.  (*Exhibit 18, IICD Removal Notice; Exhibit 19, IICD Certified Mail Receipt*).

65.     The letter fraudulently indicated that it was from JA Hauling when in fact it was sent by ATRS.  (*Ex. 18; Ex. 11 at 26*).

66.     Planet Aid's donation bin was eventually removed from the Sam's Club in Jackson, although Planet Aid does not know where its bin was taken.  (*Ex. 4*).

67.     On or about November 26, 2012, ATRS sent through the U.S. mail notices to SVdP, Planet Aid, and IICD to remove their donation bins from Bloomfield Town Square, 2207 S. Telegraph Road, Bloomfield Hills.  (*Exhibit 20, Nov. 27, 2012, Letter to SVdP; Exhibit 21, Nov. 27, 2012, Letter to Planet Aid; Exhibit 22, Letter to IICD; Exhibit 23, Nov. 28, 2012, Email from Spath*).

68.     Again, all of these letters sent through the U.S. mail to Plaintiffs were fraudulent in that they indicated they were from JA Hauling when in fact they were from ATRS and meant to further the activities of the enterprise.  (*Exs. 20-22; Ex. 11 at 26-27*).

69.     The targeted donation bins in Jackson and Bloomfield Hills were eventually removed, although SVdP, Planet Aid, and IICD have no idea where their bins were taken.  (*Ex. 2; Ex. 4; Ex. 6; Ex. 11 at 50*).

70.     While ATRS had JA Hauling steal one of Planet Aid's bins from the Bloomfield Hills site, Planet Aid removed a second bin from that location in order to prevent it from also being stolen by Defendant.  (*Ex. 4*).

71.     ATRS paid James Ball for taking Plaintiffs' bins to be scrapped at a local scrapyard, OmniSource.  (***Ex. 11 at 42-43***).

72.     On December 13, 2012, IICD sent a letter to James Ball and JA Hauling informing him of the proper Michigan address to send correspondence to IICD Michigan, and that if IICD donation bins needed to be removed, IICD had the truck and equipment necessary to do so on its own.  (***Exhibit 24, Dec. 13, 2012, IICD Letter to JA Hauling***).

73.     On December 31, 2012, the attorney for IICD sent a cease and desist letter to JA Hauling and James Ball demanding that he stop stealing IICD's bins.  (***Exhibit 25, IICD Cease and Desist Letter***).

74.     On or about January 14, 2013, ATRS sent a letter through the U.S. mail that fraudulently indicated it was from JA Hauling and stated that IICD had to remove its donation bin from the Brighton Mall, 8483 Grand River, Brighton, Michigan, within 72 hours.  (***Exhibit 26, Jan. 14, 2013, Letter to IICD***).

75.     IICD's bin was taken from that location, and IICD has no idea where its bin and donated goods contained therein were taken.  (***Ex. 6***).

76.     Also on January 14, 2013, ATRS sent a letter through the U.S. mail that fraudulently indicated it was from JA Hauling and stated that IICD had to remove its donation bin from the Prospect Hill Shopping Center, 510 Highland

16

Ave., Milford, Michigan, within 72 hours.  (***Exhibit 27, Jan. 14, 2013, Letter to IICD about Prospect Hill***).

77.   IICD's bin was taken from that location, and IICD has no idea where its bin and donated goods contained therein were taken.  (***Ex. 6***).

78.   On January 16, 2013, Spath informed James Ball that Defendant ATRS wanted the enterprise to carry out the removal of nine (9) Donation Bins in the Brighton/South Lyon area, and 14 more in Lincoln Park and Roseville.  (***Exhibit 28, Jan. 16, 2013, Spath Email***).

79.   Among those bins in Lincoln Park were those situated at the Lincoln Park Shopping Center 1812 Dix Highway, Lincoln Park, MI, belonging to SVdP.  (***Ex. 2***).

80.   However, the property owner/manager informed Patrick Bennett of ATRS that she would have to rescind her prior permission to Defendant to remove Plaintiffs' bins from the property until further notice.  (***Exhibit 29, Jan. 17, 2013, Email to ATRS***).

81.   Patrick Bennett repeatedly attempted to convince the property owner to rescind permission for Plaintiffs to have their bins on the property, but to no avail.  (***Exhibit 30, January 21, 2013, Email from ATRS to Grand Sakwa***).

82.   Despite not hearing back from the property owner, ATRS sent out fraudulent letters through the U.S. mail indicating that SVdP and Planet Aid had to

remove their bins from the Lincoln Park Shopping Center even though ATRS knew that was not true.  (*Exhibit 31, Letter to SVdP; Exhibit 32, Letter to Planet Aid*).

83.     Upon information and belief, ATRS fraudulently photocopied the signature of the Lincoln Park property owner or manager onto additional removal documents, which were then sent to Plaintiffs through the U.S. mail.  (*Exs. 31-32*).

84.     JA Hauling, at the direction of ATRS, eventually removed the donation bins belonging to SVdP and Planet Aid from the Lincoln Park Shopping Center.  (*Ex. 2; Ex. 4*).

85.     SVdP and Planet Aid do not know the whereabouts of their bins that were at the Lincoln Park property, or the donated goods contained therein.  (*Ex. 2; Ex. 4*).

86.     On February 22, 2013, Spath informed JA Hauling that ATRS had targeted Planet Aid donation bins in Milford (510 Highland Avenue) and Lincoln Park.  (*Exhibit 33, Feb. 22, 2013, Email from ATRS*).

87.     In fact, a couple days earlier, another ATRS employee had told JA Hauling that Planet Aid had just placed a donation bin in Milford and ATRS had already sent a letter through the mail to fraudulently inform Planet Aid that the bin had to be removed.  (*Exhibit 34, February 20, 2013, Email; Exhibit 35, Removal Notice to Planet Aid*).

88.     Planet Aid does not know the whereabouts of its bin that was previously in Milford, or the donated contents contained therein. (***Ex. 4***).

89.     By March 2013, ATRS and JA Hauling were aware that Milford Police had been looking into their enterprise and whether donation bins had been improperly taken from a property in Milford. (***Exhibit 36, March 5, 2012, Email***).

90.     After James Ball told Spath that everything was fine, Spath wrote back: "Hope that alleviates some of your fears….told you we knew what we were doing." (***Exhibit 37, March 6, 2013, Email***).

91.     Thus, the enterprise continued later that month, as ATRS used the U.S. mail system to send additional fraudulent letters to SVdP in furtherance of the enterprise, indicating SVdP had to remove their donation bins from South Allen Shopping Center, 15411 Southfield Road, Allen Park. (***Exhibit 38, JA Hauling Paperwork dated March 22, 2013***).

92.     SVdP had permission to have its bins located at the South Allen Shopping Center, but the bins were removed anyways, and SVdP has no idea as to where those bins were taken. (***Ex. 2***).

93.     On or about April 1, 2013, SVdP learned from one of its drivers that its donation bin located at Thunderbowl Lanes, 4200 Allen Road, Allen Park, had been removed and all that was left remaining was the cutoff locks. (***Ex. 2; Ex. 11 at 18; Exhibit 39, Pictures***).

94.     A number of days after the bins had been removed, SVdP received a letter in the U.S. mail that fraudulently indicated it was from JA Hauling when in fact it was from ATRS (*Ex. 2; Exhibit 40, Thunderbowl Lanes Letter*).

95.     The letter fraudulently stated that SVdP's donation bins were placed without proper authorization, and SVdP had 72 hours to remove the bin from the Thunderbowl Lanes location – even though the bins had already been removed by the enterprise.  (*Ex. 2; Ex. 40*)

96.     The above referenced letter was sent to SVdP headquarters in St. Louis, Missouri, and by the time the Detroit headquarters of SVdP received the letter, JA Hauling had already removed the bins.  (*Ex. 2*).

97.     SVdP contacted Thunderbowl Lanes, who confirmed that SVdP had permission to place its donation bins on the property.  (*Ex. 2*).

98.     In fact, Thunderbowl Lanes permitted SVdP to place a replacement bin on the property now that ATRS had fraudulently stolen the previous one.  (*Ex. 2*).

99.     To date, SVdP does not know the whereabouts of the donation bin it had previously put at Thunderbowl Lanes and that the enterprise Defendant created and directed removed and scrapped.  (*Ex. 2*).

100.   On or about April 3, 2013, a representative from SVdP, Larry Griffin, informed Mr. Ball that SVdP never received calls from JA Hauling, as claimed in

the fraudulent letters ATRS had sent under JA Hauling letterhead through the U.S. mail with regard to a number of SVdP donation bins.  (***Ex. 2; Ex. 11 at 46-47***).

101.   Mr. Griffin also informed JA Hauling of the value of the bins and their contents, and should JA Hauling be asked to remove SVdP's bins in the future, to contact Mr. Griffin directly and SVdP would remove the bins immediately.  (***Ex. 2***).

102.   Thereafter, SVdP received numerous letters from JA Hauling calling for SVdP to remove its donation bins from a variety of locations throughout Michigan.  (***Ex. 2***).

103.   However, JA Hauling disregarded the agreement to contact SVdP prior to removing the bins and continued to remove SVdP's bins from their locations at the direction of ATRS.  (***Ex. 2; Ex. 11 at 46-47***).

104.   In fact, Mr. Ball told ATRS that SVdP requested that their donation bins be returned to SVdP instead of scrapped, but ATRS ordered Mr. Ball to scrap SVdP's bins anyways.  (***Ex. 11 at 47***).

105.   On or about April 15, 2013, ATRS directed James Ball to carry out the removal of IICD's donation bin from 200 Capital SW, Battle Creek, and the removal of SVdP's donation bin outside the Wal-mart at 3301 Pontiac Trail, in Commerce Township.  (***Exhibit 41, April 16 Email from ATRS***).

106.    Neither SVdP nor IICD know the whereabouts of their donation bins that were taken from Commerce Township and Battle Creek respectively in on or about April 15, 2013.  (***Ex. 2; Ex. 6***).

107.    On or about May 14, 2013, SVdP's counsel sent JA Hauling a cease and desist letter requesting that it return all of SVdP's bins that the company had removed; no response was given.  (***Exhibit 42, Cease and Desist Letter***).

108.    Planet Aid also sent a cease and desist letter to JA Hauling.  (***Ex. 4***).

109.    Mr. Ball gave the SVdP cease and desist letter to ATRS, but the ATRS representative in Michigan assured Mr. Ball the letter was a "scare tactic." (***Ex. 11 at 34***).

110.    Thereafter, on or about June 18, 2013, Plaintiff SVdP received a letter ATRS sent through the U.S. mail that fraudulently indicated they were from JA Hauling regarding the bins SVdP had placed at the CVS on 66 E. Walton, Pontiac, Michigan.  (***Exhibit 43, CVS Pontiac letter***).

111.    SVdP sent the CVS at this location a certified letter on June 3, 2013, inquiring as to whether or not they wished to continue the bin site agreement.  (***Ex. 2; Exhibit 44, Permission Agreement***).

112.    To date, SVdP had not received a response.  (***Ex. 2***).

113.    Sometime between July 5, 2013 and July 10, 2013, donation bins belonging to SVdP and Planet Aid at the CVS located at 66 E. Walton in Pontiac

were removed, as evidenced by pictures James Ball sent to ATRS as proof his work was completed.  (*Ex. 2; Ex. 4; Ex. 45, Pictures from CVS*).

114.   SVdP filed a report with the Oakland County Sheriff's Office, and Deputy McCann issued a report, Incident No. 13-111163.  (*Ex. 2*).

115.   Planet Aid also filed a report with the Oakland County Sheriff's Office.  (*Ex. 4*).

116.   Neither SVdP nor Planet Aid know the whereabouts of the bins they had placed at the CVS in Pontiac.  (*Ex. 2; Ex. 4*).

117.   None of the donation bins that JA Hauling has removed over the past year as part of the enterprise Defendant and Mr. Ball participated in and carried out, as well as the contents contained therein, have been found or returned to their rightful owners.  (*Ex. 2; Ex. 4; Ex. 6*).

118.   In order to pay Mr. Ball for his participation in the enterprise, ATRS sent him checks made out to JA Hauling through the U.S. mail from its corporate office in Houston.  (*Ex. 11 at 14, 24; Exhibit 46, Check to JA Hauling*).

119.   The checks sent from ATRS were from "Metroplex Distribution Corporation," which is related to ATRS.  (*Exhibit 47, Metroplex Distribution Corporation State Registration*).

120.   David Peganyee, who is the president of ATRS, is also the President of Metroplex Distribution Corporation.   (*Ex. 48, Metroplex Distrubtion Corporation Officers and Directors*).

121.   As part of the enterprise, ATRS also permitted Mr. Ball to keep the $30-$40 generated from scrapping each of Plaintiffs' donation bins at OmniSource. (*Ex. 11 at 20-21; Exhibit 49, Scrapyard Receipt*).

122.   In order to conceal its role in the enterprise, ATRS took several affirmative steps

123.   ATRS did not want JA Hauling to bring Plaintiffs' donation bins to ATRS, instead directing Mr. Ball to immediately scrap Plaintiffs' donation bins even though no property owner requested such action.  (*Ex. 11 at 20*).

124.   In fact, donation bins belonging to Planet Aid and IICD have gone missing after receipt of letters from JA Hauling have since been found at the abandoned Packard Plant in Detroit, Michigan.  (*Exhibit 50, Pictures*).



125.   In fact, on or about March 25, 2013, twelve (12) donation bins were found at the Packard Plant, including eight (8) bins belonging to IICD that had been reported stolen the week before from Ann Arbor, Waterford, Roseville, and White Lake.  (***Ex. 6***).

126.   Two donation bins belonging to Planet Aid were also found dumped at the Packard Plant.  (***Ex. 6***).

127.   Additionally, ATRS sent out all of the letters through the U.S. mail fraudulently indicating the letters were from JA Hauling.  (***Ex. 11 at 25-27***).

128.   Also, in order to conceal the activities of the enterprise, ATRS directed Mr. Ball to write "garbage removal" on the invoices he sent to ATRS, and specifically directed Mr. Ball to refrain from indicating he had disposed of Plaintiffs' donation bins.  (***Ex. 11 at 21, 51-52; Exhibit 51, JA Hauling Invoices to ATRS***).

129.   Mr. Ball complied with this request and wrote many different descriptions on invoices he sent to ATRS in Houston in order to conceal that ATRS was paying him for the removal and scrapping of Plaintiffs' donation bins. (***Ex. 51***).

130.   Plaintiffs collect the contents of their donation bins on a weekly basis, with the weekly collection from the bins Defendant stole totaling between 350-400 pounds of clothes and shoes on average.  (***Ex. 2; Ex. 4; Ex. 6***).

131.   In 2012, IICD Michigan collected nearly 2.25 million pounds of shoes and goods.  (***Exhibit 52, IICD Spring 2013 Newsletter***).

132.   Plaintiffs have been denied the opportunity to continue collecting materials in their bins that have already been removed and scrapped by JA Hauling as part of the ongoing fraudulent scheme formulated and carried out by ATRS. (***Ex. 2; Ex. 4; Ex. 6***).

133.   ATRS has asked JA Hauling to remove and scrap more of Plaintiffs' bins in the comings weeks.  (***Ex. 11 at 37***).

## COUNT I
### *CIVIL RICO 18 U.S.C. § 1962(c)*

134.   Plaintiffs reference paragraphs 1 through 133 as if fully restated herein.

135.   Section 1962(c) of Title 18 of the United States Code prohibits any person from conducting an enterprise or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity.  Section 1964(d) of Title 18 provides that "[a]ny person injured in his business or property by reason of a violation of section 1962…may sue therefor in any appropriate United States district court."

136.   As alleged in paragraphs 1 through 129, Defendant ATRS and JA Hauling formed an enterprise engaged in activities that directly affect interstate commerce.

137.   Defendant ATRS created, agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs.  Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP, Planet Aid, and IICD they no longer had permission to maintain their donation bins at Bloomfield Town Square, 2207 Telegraph Road, Bloomfield Hills, Michigan, and instructed JA Hauling to remove the bins on or around November 30, 2013.  The letters fraudulently indicated they were from JA Hauling when they were sent by ATRS.  (***Exs. 20-22; Ex. 11 at 26***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property. (*Ex. 28; Exs. 31-32*).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property. (*Ex. 2; Ex. 11; Ex. 40*). The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along. (*Ex. 2*).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise. (*Exs. 43-45; Ex. 2; Ex. 4*).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS. (*Ex. 11 at 26, 28; Exs. 16-22; Exs. 26-27; Exs. 31-32*).

138.   Pursuant to and in furtherance of the fraudulent scheme and enterprise, Defendant committed multiple related acts of mail fraud.

139.   The acts set forth above, which took place over nine (9) months in at least five (5) Michigan cities and led to the improper removal of more than 12 of

Plaintiffs' donation bins as enabled by the repeated and ongoing use of the U.S. mail system, constitute a pattern of racketeering activity pursuant to 18 U.S. C. § 1961(5).

140.   Defendant has directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(c).

141.   As a direct and proximate result of the Defendant's racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been injured in their business and property in that the enterprise and directly and proximately caused Plaintiffs to be deprived of their donations bins, which were scrapped as part of the enterprise, and the donated contents therein, which Plaintiffs would have also benefitted from economically.

142.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

## COUNT II
### RICO SECTION 1962(b)

143.   Plaintiffs reference paragraphs 1 through 142 as if fully restated herein.

144.   Defendant ATRS and JA Hauling, owned and operated by James Bell, created an enterprise engaged in activities that directly affect interstate commerce.

145.   Defendant created, maintained and has direct economic interests in and control over the enterprise through a pattern of racketeering activity. Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP, Planet Aid, and IICD they no longer had permission to maintain their donation bins at Bloomfield Town Square, 2207 Telegraph Road, Bloomfield Hills, Michigan, and instructed JA Hauling to remove the bins on or around November 30, 2013.  The letters fraudulently indicated they were from JA Hauling when they were sent by ATRS.  (*Exs. 20-22; Ex. 11 at 26*).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property.  (*Ex. 28; Exs. 31-32*).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property.  (*Ex. 2; Ex. 11; Ex. 40*).  The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along.  (*Ex. 2*).

30

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise. (***Exs. 43-45; Ex. 2; Ex. 4***).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS. (***Ex. 11 at 26, 28; Exs. 16-22; Exs. 26-27; Exs. 31-32***).

146. Defendant maintained control over the enterprise through the use of dozens of emails and letters sent through the U.S. Mail. (***Ex. 11 at 26, 28; Exs. 16-22; Exs. 26-27; Exs. 31-32***).

147. The mail fraud referenced herein constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

148. Defendant has directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. 1962(b).

149. As a direct and proximate result of the Defendant's racketeering activities and violations of 18 U.S.C. § 1962(b), Plaintiffs have been injured in their business and property in that the enterprise directly and proximately caused Plaintiffs to be deprived of their donations bins, which were scrapped as part of the

enterprise, and the donated contents therein, which Plaintiffs would have also benefitted from economically.

150.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

## COUNT III
### RICO SECTION 1962(d)

151.   Plaintiffs reference paragraphs 1 through 150 as if fully restated herein.

152.   As set forth above, Defendant agreed and conspired to violate 18 U.S.C. §§ 1962(b) and (c).  Specifically:

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP, Planet Aid, and IICD they no longer had permission to maintain their donation bins at Bloomfield Town Square, 2207 Telegraph Road, Bloomfield Hills, Michigan, and instructed JA Hauling to remove the bins on or around November 30, 2013.  The letters fraudulently indicated they were from JA Hauling when they were sent by ATRS.  (*Exs. 20-22; Ex. 11 at 26*).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins at the Lincoln Park Shopping Center, 1812 Dix, Lincoln Park, Michigan, and instructed JA Hauling to remove the bins on

January 21, 2013, even though the property owner had specifically told Defendant it did not have permission to remove Plaintiffs' bins from the property. (***Ex. 28; Exs. 31-32***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiff SVdP it no longer had permission to maintain its donation bin at Thunderbowl Lanes, 4200 Allen Road, in Allen Park, and instructed JA Hauling to remove the bin, even though Plaintiffs' bins were permitted to be on the property. (***Ex. 2; Ex. 11; Ex. 40***).   The property owner has since told Plaintiff SVdP it had permission to locate its donation bins on the property all along. (***Ex. 2***).

- ATRS used the U.S. mail system to fraudulently inform Plaintiffs SVdP and Planet Aid they no longer had permission to maintain their donation bins placed at the CVS at 66 E. Walton, Pontiac, Michigan. Even though Plaintiffs did in fact have permission to have its bin at the property, JA Hauling removed the bins, stole the donated goods contained therein, and scrapped Plaintiffs' donation bins, all at the direction of ATRS as part of the ongoing enterprise. (***Exs. 43-45; Ex. 2; Ex. 4***).

- ATRS used the U.S. mail system to send more than 10 letters to Plaintiffs that fraudulently indicated they were drafted and sent from JA Hauling, in order to further the enterprise while concealing ATRS' involvement therein, when in fact the letters were drafted and sent by ATRS. (***Ex. 11 at 26, 28; Exs. 16-22; Exs. 26-27; Exs. 31-32***).

153.   Defendant has intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

154.    Defendant knew its predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme described above.   That conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962 (b) and (c), in violation of 18 U.S.C. § 1962(d).

155.   As a direct and proximate result of the Defendant's conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that

156.   Wherefore, Plaintiffs request that this Court enter judgment against Defendant as follows:

- Award actual damages for the loss of the donation bins, as well as the used goods Defendant stole from Plaintiffs as part of Defendant's enterprise.
- Award treble damages due to Plaintiffs' significant property losses.
- Award attorney fees and costs Plaintiffs have wrongly incurred as a result of Defendant's fraudulent scheme and enterprise, as well as any additional relief the Court deems prudent.

## COUNT IV
### *TRESPASS TO CHATTELS*

157.   Plaintiffs restate the allegations in paragraphs 1 through 156 as if fully restated herein.

158.   Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford.  (***Ex. 2, Ex. 4; Ex. 6***).

159.   Plaintiffs' donation bins were clearly marked as to identify the owner of the bins, which were properly located on private property with permission of landlords and/or on site managers of the businesses otherwise occupying the locations.

160.   Defendant ATRS wrongfully directed JA Hauling to exercise dominion or control over the Plaintiffs' donation bins and their contents by telling JA Hauling which donation bins belonging to Plaintiffs to remove and dispose of so that ATRS could then locate its own bins at select locations.   (*Ex. 11 at 25-28*).

161.   The removal of Plaintiffs' donation bins constitutes a trespass to chattels, as coordinated and directed by Defendant ATRS, since JA Hauling has wrongfully exercised dominion and control over Plaintiffs' donation bins and Defendant ATRS has wrongfully exercised dominion and control over goods donated to Plaintiffs' donation bins and refuses to return the missing property or allow Plaintiffs to know the location of the property.  *See Burns v Kirkpatrick*, 91 Mich 364; 51 NW 893 (1892).

162.   Plaintiffs suffered damages in excess of $75,000 when Defendant discarded Plaintiffs' donation bins and their contents over this period of time.

## COUNT V
### CONVERSION

163.   Plaintiffs restate the allegations in paragraphs 1 through 162 as if fully restated herein.

164.   Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford.  (*Ex. 2, Ex. 4; Ex. 6*).

165.   Plaintiffs' donation bins were clearly marked as to identify the owner of the bins, which were properly located on private property with permission of landlords and/or on site managers of the business.

166.   Defendant directed and assisted JA Hauling's continued wrongful possession of Plaintiffs' donation bins and their contents, which is conversion under Michigan law, as ATRS has wrongfully exerted control over Plaintiffs' property and has denied Plaintiffs the right to possess their property.  *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111; 593 NW2d 595 (1999); MCL 600.2919a.

167.   Plaintiffs suffered damages in excess of $75,000 when Defendant removed the donation bins and the contents over this period of time.

## COUNT VI
### STATUTORY CONVERSION (MCL §600.2919a)

168.   Plaintiffs restate the allegations in paragraphs 1 through 167 as if fully restated herein.

169.   Plaintiffs are the owners of a number of donation bins throughout a number of Michigan cities, including Allen Park, Bloomfield Hills, Lincoln Park, and Milford.  (*Ex. 2, Ex. 4; Ex. 6*).

170.  Plaintiffs' donation bins were clearly marked as to identify the owner of the bins and properly located on private property with permission of landlords and/or on site managers of the business.

171.  Defendant ATRS' and JA Hauling's removal of Plaintiffs' donation bins from sites where it had lawful permission to operate constitutes stealing and conversion of the bins and the goods contained therein for the use of Defendant.

172.  Defendant's conduct constitutes a violation of MCL §600.2919(a), Michigan's statutory conversion claim, in the Defendant stole or converted Plaintiffs' property to Defendant's own use or benefit.

173.  Mich. Comp. Laws § 600.2919a(1) further provides that a person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees.

## COUNT VII
### CLAIM AND DELIVERY

174.  Plaintiffs restate the allegations in paragraphs 1 through 173 as if fully restated herein.

175.  Defendant directed James Ball, through the enterprise JA Hauling, to unlawfully remove and detain Plaintiffs' donation bins and the goods contained therein, or otherwise recycle same.

176.  As result of Defendant's actions and directions to JA Hauling, Plaintiffs have suffered damages in excess of $75,000.

177.   Pursuant to MCL 600.2920(1), Plaintiffs are entitled to recover their donation bins and donated goods that have been taken from them at Defendant's direction.

178.   Plaintiffs are also entitled to recover damages sustained by the unlawful taking and detention of their property.

179.   Plaintiffs request that their possessions, including their donation bins and their contents, be recovered and damages be awarded in excess of $75,000 to recover the damages incurred during the time period Plaintiffs' bins were not in place.

180.   Plaintiffs respectfully request that the Court order the Defendant to return the property; or in the alternative if the property is kept by Defendant, order that the property not be destroyed and order Defendant to post a bond in the amount of $75,000 or promise to pay more than the value of the property if destroyed.

### COUNT VIII
*Tortious Interference with Business Relationship*

181.   Plaintiffs restate the allegations paragraphs 1 through 180 as if fully restated herein.

182.   Plaintiffs had permission from various independent business owners that allowed Plaintiffs to place their donation bins on the business owners' private property.

38

183.   Based on this permission, Plaintiffs had a reasonable business expectancy that they would be allowed to maintain their donation bins at these locations and derive economic gain on a weekly basis.

184.   Defendant had knowledge of Plaintiffs' business expectancy.

185.   Defendant intentionally and improperly interfered with Plaintiffs' business expectancy by actively contacting the owners of the properties where Plaintiffs' donation bins were located and offering to remove the bins free of charge.

186.   Defendant's intentional and improper interference caused a breach or termination of Plaintiffs' expectancy.

187.   Defendant's intentional and improper interference with Plaintiffs' business expectancy has damaged Plaintiffs in an amount in excess of $75,000.

**Relief Requested**

WHEREFORE, Plaintiffs pray for a judgment against Defendant and that this Honorable Court:

a.   Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

b.   Pursuant to 28 USC § 2202, Fed. R. Civ. Pro. 65, 18 U.S.C. 1964(c) award Plaintiffs exemplary, compensatory and nominal damages, as well as treble damages;

c.  Pursuant to 18 USC § 1964 (c) and other applicable law, award Plaintiffs their reasonable attorney fees, costs; and

d.  Grant such other and further relief as the Court deems equitable, just and proper.

Dated:  October 7, 2013                          Respectfully Submitted,

                                                 **DALTON & TOMICH, plc**

                                                 By:/s/ Daniel P. Dalton
                                                 Attorney for Plaintiffs
                                                 41000 Woodward Ave., Ste. 345 East
                                                 Bloomfield Hills, MI 48304
                                                 (248) 971-2400
                                                 (248) 971-1906 (Fax)
                                                 ddalton@daltontomich.com

## Verification

Pursuant to 28 USC § 1746, I _____ declare under penalty of perjury that I have personal knowledge of matters contained in paragraphs 7-94 of this Verified Complaint and that the allegations contained therein are true and accurate.

Executed this _18_ day of _September_ 2013

St. Vincent de Paul

By: _____

Its: _____EXECUTIVE DIRECTOR___

Planet Aid

By: _____

Its: ____Operations Manager____

33

## Verification

Pursuant to 28 USC § 1746, I, declare under penalty of perjury that I have personal knowledge of matters contained in paragraphs 7-107 of this Verified Complaint and that the allegations contained therein are true and accurate.

Executed this ___18th___ day of ___September___, 2013

Planet Aid

By: _____

Its: ___Regional Mng.___

## Demand for Trial by Jury

The Plaintiffs herein demand a trial by jury in this cause of action.

Respectfully Submitted,

**DALTON & TOMICH, plc**

By:/s/ Daniel P. Dalton
Attorney for Plaintiffs
41000 Woodward Ave., Ste. 345 East
Bloomfield Hills, MI 48304
(248) 971-2400
(248) 971-1906 (Fax)
ddalton@daltontomich.com


Dated:  October 7, 2013


## Certificate of Service

I HEREBY CERTIFY that I have on this 2nd day of October, 2013, served a copy of the foregoing on counsel for all parties to this proceeding by operation of the Court's CM/ECF system.

 /s/ Daniel P. Dalton
Attorney for Plaintiff

42