# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**SOCIETY OF ST. VINCENT DE PAUL IN THE ARCHDIOCESE OF DETROIT**, a Michigan Nonprofit Corporation, **PLANET AID**, a Massachusetts Nonprofit Corporation, and the **INSTITUTE FOR INTERNATIONAL COOPERATION AND DEVELOPMENT MICHIGAN**, a Michigan Nonprofit Corporation,

   Plaintiffs,

v.

**A.T.R.S., Inc.,** a Texas Corporation, d/b/a American Textile Recycling Services,

   Defendant.

HON. Denise Page Hood
Case No. 2:13-cv-14004-DPH-LJM

---

**DALTON & TOMICH plc**
Daniel P. Dalton (P 44056)
Attorney for Plaintiffs
41000 Woodward Ave. Ste 345 East
Bloomfield Hills MI 48304
Tel. (248) 971-2400
Fax (248) 971-1906
ddalton@daltontomich.com

---

## PLAINTIFFS' *AMENDED* MOTION FOR PRELIMINARY INJUNCTION

  NOW COMES the Plaintiffs, Society of St. Vincent de Paul in the Archdiocese of Detroit ("SVdP"), Planet Aid, and the Institute for International Cooperation and Development Michigan ("IICD") (referred to jointly as

1

"Plaintiffs") by and through their attorneys, **_Dalton & Tomich plc_**, and respectfully request that this Court issue a Preliminary Injunction pursuant to Fed. R. Civ. P 65(a) enjoining Defendant A.T.R.S., doing business as American Textile Recycling Services ("ATRS" or "Defendant"), from unlawfully removing Plaintiffs' donation bins and converting the bins and their contents, for the reasons outlined in the attached Brief in Support.

WHEREFORE, Plaintiffs request that this Court GRANT its Motion and Order the following:

   a.    Enjoin and restrain the Defendant, directly or indirectly, whether alone or in concert with others, including any officer, agent, employee, and/or representative, until further order of this Court, from doing any of the following:

       i.    Contacting property owners in order to seek approval for removing Plaintiffs' donation bins;

       ii.    Moving or removing any of Plaintiffs' donation bins from their locations;

       iii.    Removing the contents of any of Plaintiffs' donation bins;

       iv.    Converting any of Plaintiffs' donation bins into scrap metal.

   b.    That Defendant preserve and provide to Plaintiffs all documents, electronic mail, tape recordings or any other matter in its possession related to Plaintiffs.

   c.    Maintain the Order in full force and effect until the Court specifically orders otherwise.

    d.    Defendant shall show cause before the Court why a preliminary injunction should not be ordered according to the terms and conditions set forth above.

Respectfully Submitted,

**DALTON & TOMICH, plc**

By:/s/ Daniel P. Dalton
Attorney for Plaintiffs
41000 Woodward Ave., Ste. 345 East
Bloomfield Hills, MI 48304
(248) 971-2400
(248) 971-1906 (Fax)
ddalton@daltontomich.com

Dated:  October 7, 2013

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SOCIETY OF ST. VINCENT DE PAUL IN THE ARCHDIOCESE OF DETROIT**, a Michigan Nonprofit Corporation, **PLANET AID**, a Massachusetts Nonprofit Corporation, and the **INSTITUTE FOR INTERNATIONAL COOPERATION AND DEVELOPMENT MICHIGAN**, a Michigan Nonprofit Corporation,

HON.  Denise Page Hood
Case No.  2:13-cv-14004-DPH-LJM

      Plaintiffs,

v.

**A.T.R.S., Inc.,** a Texas Corporation, d/b/a American Textile Recycling Services,

      Defendant.

| |
|---|
| **DALTON & TOMICH plc**<br>Daniel P. Dalton (P 44056)<br>Attorney for Plaintiffs<br>41000 Woodward Ave. Ste 345 East<br>Bloomfield Hills MI 48304<br>Tel. (248) 971-2400<br>Fax (248) 971-1906<br>ddalton@daltontomich.com |

## PLAINTIFFS' *AMENDED* BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

QUESTIONS PRESENTED ..................................................................iv

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND ..................................................................2

    The Recycled Textiles Industry……………………………………………4

    ATRS Devises a Fraudulent Scheme to Remove Plaintiffs' Bins…………5

    ATRS Executes its Fraudulent Scheme…………………………………8

STANDARD OF REVIEW .................................................................17

LEGAL ARGUMENT ........................................................................17

    1.    Likelihood of Success on the Merits ................................................17

        (a) Trespass to Chattels……………………………………………18

        (b) Conversion………………………………………………………19

        (c) Statutory Conversion……………………………………………20

        (d) Tortious Interference with Business Relationship………………21

    2.    Irreparable Harm ................................................................................23

    3.    Balancing of Hardships Tips in Plaintiffs' Favor and an Injunction
        Serves the Public Interest .................................................................24

CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page**

*Abney v. Amgen, Inc.,* 443 F.3d 540 (6th Cir. 2006)……………………………...24

*Colorado v. Idarado Mining Co.*, 916 F.2d 1486 (10th Cir. 1991)………………18

*Karhani v. Meijer,* 270 F. Supp. 2d 926 (E.D. Mich. 2003)..……………………17

*Leary v. Daeschner*, 228 F.3d 729 (6th Cir. 2000) …………………………………17

*Northeast Ohio Coalition v. Husted*, 696 F.3d 580 (6th Cir. 2012)………………17

*Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1067 (9th Cir. 1986) ……….….…18

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341 (6th Cir. 1998) ………………………………...……17

*Victory Lane Quick Oil Change, Inc. v. Hoss*, 659 F. Supp. 2d 829 (E.D. Mich. 2009)………………………………………………………………………………...22

*Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F. Supp. 2d 734 (E.D. Mich. 2003)……………………………………………………………………………24

**State Cases**

*Bonelli v. Volkswagen of Am., Inc*., 421 N.W.2d 213 (Mich. App. 1988)..……22

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919 (Mich. App. 1996)……………………………………………………………………….…22

*Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917 (Mich. App. 2001)….…19

*Burns v. Kirkpatrick*, 51 N.W. 893 (Mich. 1892). ………………………….…18

*Campbell v. Sullins,* 667 N.W.2d 887 (Mich. App. 2003)………………………21

*Foremost Ins. Co. v Allstate Ins. Co.*, 486 N.W.2d 600 (Mich. 1992). …………19

*Lawsuit Financial, LLC v. Curry*, 683 N.W.2d 233 (Mich. App. 2004). ………19

*Mackie v. Bollore S.A.,* 2010 WL 673295 (Mich. App. Feb. 25, 2010)…….…18

*Marshall Lasser, PC v. George,* 651 N.W.2d 158 (Mich. App. 2002) …………21

*Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341 (Mich. App. 1984)….…22

**Statutes**

18 U.S.C. § 1964…………………………………………………………………18

MCL 600.2919a…....…………………………………………………………20

# QUESTIONS PRESENTED

1.      Whether this Court should issue a preliminary injunction in the form proposed by Plaintiffs?

   *Plaintiffs' answer: YES*

2.      Whether Plaintiffs' have a likelihood of success on the merits of its claims?

   *Plaintiffs' answer: YES*

3.      Whether Plaintiffs will suffer irreparable harm if a preliminary injunction does not issue?

   *Plaintiffs' answer: YES*

4.      Whether Defendant can demonstrate any harm to itself or others if a preliminary injunction issues?

   *Plaintiffs' answer: No*

5.      Whether the preliminary injunction will serve the public's best interest?

   *Plaintiffs' answer: YES*

## INTRODUCTION

This is a civil action brought by Plaintiffs Society of St. Vincent de Paul (hereinafter "SVdP"), Planet Aid (hereinafter "Planet Aid"), and the Institute for International Cooperation and Development Michigan (hereinafter "IICD") (jointly referred to as "Plaintiffs") for damages and injunctive relief against Defendant American Textile Recycling Services (hereinafter "ATRS"). Plaintiffs are nonprofit organizations that place donation bins in several Michigan cities. The public place lightly used clothes, shoes and other goods into Plaintiffs' bins. Plaintiffs in turn sell or otherwise recycle the donated goods in order to benefit Plaintiffs or a variety of charitable organizations across the country and the world.

The textile donation industry is becoming increasingly competitive, with some bin owners removing those bins belonging to their competitors. Over the last year, ATRS devised and executed a scheme in which it fraudulently informed Plaintiffs in fraudulent letters sent through the U.S. mail that they no longer had permission to place their bins at certain locations in Michigan. ATRS then gave Plaintiffs 72 hours to remove their bins from the specific locations, but strategically mailed the notices so that they would arrive after the 72-hour window had already expired. Also by that time, the enterprise ATRS created and directed had already stolen Plaintiffs' donation bins, removed the donated goods, and scrapped Plaintiffs' donation bins at a local scrap yard.

1

This fraudulent scheme violates the Civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), in that Defendant used the U.S. mail to further its enterprise that directly impacts interstate and international commerce.  Defendant's actions also violate several provisions of Michigan law, including trespass to chattels, conversion, statutory conversion, and tortious interference with a business relationship.  Defendant ATRS has no intention of ceasing its fraudulent operation; ATRS is continuing the enterprise and plans to steal and scrap more of Plaintiffs' bins in the immediate future.  Thus, this Court should grant Plaintiffs' Motion for Preliminary Injunction in order to prevent any further fraudulent removal of Plaintiffs' donation bins.

## FACTUAL BACKGROUND

Plaintiff SVdP is a charitable organization inspired by Gospel values that leads women and men to join together to grow spiritually in the tradition of its founder, Blessed Frédéric Ozanam, and patron, St. Vincent de Paul, by offering person-to-person services to those who are needy and suffering.  (***Exhibit 1, SVdP Mission Statement***).  SVdP, whose National Council Office is based in St. Louis, Missouri, carries out its local charitable mission by placing donation bins on private property, in which people can deposit used clothing, shoes, and other items that ultimately benefits the poor in and around Michigan, as well as other states and eventually other countries.  (***Exhibit 2, Affidavit of SVdP***).  SVdP obtains

verbal or written permission from the property owners or the businesses operating on the property prior to placing the donation bins on the site.  *Id.*

Plaintiff Planet Aid is a charitable organization based in Elk Ridge, Maryland that also operates donation bins across the country to collect used clothing, household goods, and textiles that ultimately are donated to those less fortunate.  (***Exhibit 3, Planet Aid Mission Statement***).  Planet Aid's Michigan donation bins collect used clothing and shoes that are recycled in order to improve health, aid vulnerable children, and reduce poverty in innumerable communities.  *Id.*  Planet Aid asks for and receives permission from a property owner or business manager to place its clearly marked and properly maintained collection bin on the owner's property.  (***Exhibit 4, Affidavit of Planet Aid***).

Plaintiff Institute for International Cooperation and Development Michigan ("IICD") seeks to simultaneously offer development work programs for volunteers while also addressing environmental issues.  (***Exhibit 5, IICD Mission Statement***).  As part of that mission, IICD places donation bins in several Michigan communities to collect and recycle used clothing and shoes in order to improve health, aid vulnerable children, and reduce poverty in Southern Africa, which is where many of the donations to IICD are ultimately distributed.  (***Exhibit 6, IICD Affidavit***).  IICD asks for and receives permission from a property owner or

manager to place its clearly marked and properly maintained collection bin on the owner's property.  (*Ex. 6*).

Plaintiffs distribute or resell the items collected in their donation bins in Michigan to organizations in other states and countries.  (*Ex. 2; Ex. 4; Ex. 6*). Since Plaintiffs are nonprofit organizations, all proceeds from redistributing the items go toward overhead expenses, and the remainder is donated to charity.  *Id*. SVdP and Planet Aid collect the contents of their donation bins on a weekly basis. Plaintiffs would collect, on average, 350-400 pounds of donations weekly at the bins ATRS fraudulently removed.  *Id*.

### The Recycled Textiles Industry

Reused and recycled clothing, shoes, and other textiles is a billion dollar industry throughout the United States.  (*Exhibit 7, Dec. 30, 2012, USA Today article*).  In most instances, donation bin owners resell the donated items to national and international organizations that serve the needy across the country and the world.  (*Ex. 2; Ex. 4; Ex. 6*)  In some states, donation bin owners are in fierce competition to place their bins at well-traveled locations in order to maximize the donations collected.  *Id*.  Oftentimes organizations place bins alongside those of their competitors in an effort to entice more donations.  In some locations, there can be five (5) or more donation bins lined up next to each other.  *Id*.  This competition has led to many reports of underhanded activities, including some bin

owners locking shut or even towing away the donation bins of competitors in an effort to maximize their own donations.  (*Ex. 8, May 8, 2010, azcentral.com article*).

### ATRS Devises a Fraudulent Scheme to Remove Plaintiffs' Bins

Defendant ATRS is a for-profit corporation whose principal place of business is in Houston, Texas.  (*Ex. 9, State Registration*).  Like Plaintiffs, ATRS also places donation bins at various locations throughout several states in order to collect gently used textiles and goods. In recent years, ATRS has placed an increasing number of bins throughout Michigan while being affiliated with the Michigan Humane Society.  (*Exhibit 10, ATRS Locations*).  In several states ATRS attaches the names of well-known nonprofit organizations, such as the Michigan Humane Society, to its donation bins to entice more donations from the public, which might presume all of its donations go to the Michigan Humane Society.  (*Ex. 2; Ex. 4; Ex. 6*).

Upon information and belief, as ATRS began to increase its number of bins in Michigan, it also decided to divert donations intended for other organizations that already had a large presence in the state, including Plaintiffs, to its own bins. Specifically, ATRS officials in Houston decided to enact a fraudulent scheme where it would remove donation bins owned by Plaintiffs and other competitors that were located at places deemed desirable by ATRS, and in their place locate an

ATRS bin to garner more donations.  (*Exhibit 11, Deposition of James Ball at 24:2-7; 17-21*).

To implement the scheme, ATRS officials in Houston directed its Michigan employees, namely Michael Spath and Patrick Bennett, to create an enterprise ATRS would direct from Houston.  *Id*.  ATRS representatives in Michigan contacted James Ball and instructed him to form an unincorporated company under an assumed name, JA Hauling, that would serve as the enterprise through which Plaintiffs' donation bins would be removed.  *Id. 9:7-9:10; 9:20-10:4*.  Before commencing the scheme, an ATRS official from Houston participated in a conference call with Mr. Spath and Mr. Ball clarifying details of how the enterprise would be conducted.  *Id. 62:3-63:7*.  Mr. Ball was told to conceal ATRS' involvement in the enterprise at all times.  *Id. at 45*.

ATRS would identify locations that were occupied by Plaintiffs' donation bins, and an ATRS employee would then contact the property owners and offer to remove Plaintiffs' donation bins free of charge and then place an ATRS bin in their place.  *Id. 14:21-16:8*.  ATRS would pay Mr. Ball $150 to remove each bin, and Mr. Ball was paid through checks issued by an ATRS subsidiary in Houston and sent to Mr. Ball via U.S. mail.  *Id. 21:3-5; 24:10-11*.  ATRS had launched a similar scheme and enterprise in Arizona three years ago.  (*Exhibit 12, Nov. 2010 Article*).

In furtherance of the scheme, ATRS created fake letterhead for JA Hauling and had property owners sign letters indicating Plaintiffs no longer had permission to locate their bins on those properties.  (*Ex. 11 at 26:5-11*).  The letters were sent to Plaintiffs through the U.S. mail and indicated that Plaintiffs had 72 hours to remove their donation bins from the referenced locations.  (*Ex. 11 at 15:18-22; 40:8-15*).  ATRS drafted the letters but fraudulently indicated they had been drafted and sent by JA Hauling in order to conceal ATRS' role in the enterprise. (*Ex. 11 at 25:21-24; 28:20-24*).  In several instances, the property owners had not revoked permission for Plaintiffs to have their bins on the owners' properties.  (*Ex. 2; Ex. 4; Ex. 6*).

ATRS strategically sent the letters through the U.S. mail on Thursdays so Plaintiff would not receive the letters until the following Monday at the earliest. As soon as the 72-hour window passed, and before Plaintiff had received the letters, ATRS would direct JA Hauling to remove the bins.  (*Ex. 11, Ball Dep. 12:11-14*). To further delay Plaintiffs' time to respond, ATRS would send the letters to SVdP's headquarters in St. Louis, Missouri, to Planet Aid's headquarters in Elk Ridge, Maryland, and IICD headquarters in Williamston, Massachusetts.  (*Ex. 2; Ex.4; Ex. 6*).

ATRS further directed James Ball to take Plaintiffs' donation bins that he stole to OmniSource, a metal recycling facility in Jackson, to be scrapped rather

than return them to Plaintiffs. (*Ex. 11 at 19:24-20:7; 43:7-10*). Mr. Ball was also required to provide ATRS with photographic evidence of the bins he removed. *Id. 21:24-22:2*. OmniSource paid JA Hauling for the scrap metal, which averaged $30-$40 per bin. *Id. 20:8-11; 20:25-21:2*. The total cost associated for each bin for Plaintiffs is about $1,300. (*Ex. 2; Ex. 4; Ex. 6*).

ATRS also directed James Ball to take the contents of Plaintiffs' bins – donations that otherwise would have been sent to other states and countries – and place them in the ATRS bins. (*Ex. 11, Ball Dep. 19:4-13*). However, Mr. Ball either threw out the bin contents or donated them to Goodwill in Jackson because he "didn't feel that that was right" to take the donations from Plaintiffs' bins and put them in ATRS' bins. *Id. 19:18*. ATRS also instructed Mr. Ball on how to prepare the invoices after he removed Plaintiff's bins. Namely, Mr. Spath told Mr. Ball to label the removal as "furniture removal or garbage removal" rather than listing the bins Mr. Ball had actually removed. *Id. 21:12-23; 51:25-52:6*. ATRS also directed Mr. Ball to never mention ATRS' role in the bin removal operation if any bin owners contacted JA Hauling with concerns about the letters they received, as it would be a "conflict of interest." *Id. 45:17-46:2.*

***ATRS Executes its Fraudulent Scheme***

On Monday, July 9, 2012, Planet Aid representatives in Michigan contacted Michael Spath of ATRS to ask if ATRS had any idea what happened to the Planet

8

Aid donation bin that had been located at 3001 E. Michigan Ave. in Jackson but was now missing.  (*Exhibit 13, July 9, 2012, Email to ATRS*).  Planet Aid's bin had since been removed and replaced with three donation bins that belonged to ATRS.  *Ex. 4*.  However, Planet Aid had never been informed by the property owner at 3001 E. Michigan Ave. that it needed to remove its bin.  *Id*.  Mr. Spath responded and informed Planet Aid that "I can guarantee you that ATRS does not touch anyone else's boxes.  I don't know where any of them are."  (*Exhibit 14, July 17, 2012, Email from ATRS*).

Contrary to Mr. Spath's statement, ATRS had already hatched its fraudulent scheme and enterprise through which it worked with James Ball and JA Hauling to remove the bins owned by Plaintiffs.  In an email he sent on October 31, 2012, Mr. Spath explicitly laid out the details of the enterprise and the first set of Plaintiffs' bins ATRS had targeted.  (*Exhibit 15, Oct. 31, 2012, Email to James Ball*).

On November 7, 2012, ATRS sent a fraudulent letter through the U.S. mail calling for the removal of Planet Aid's donation bin located outside the Sam's Club at 3600 O'Neill in Jackson.  (*Exhibit 16, Certified Mail receipt; Exhibit 17, November 2, 2012, Authorization for removal*).  The bin was later stolen.  Similarly, IICD was informed in a letter Defendant sent through the U.S. mail that its donation bin at the same location was also no longer permitted and needed to be removed.  (*Exhibit 18, IICD Removal Notice; Exhibit 19, IICD Certified Mail*

*Receipt*).  The letter fraudulently indicated that it was from JA Hauling when in fact it was sent by ATRS.  (*Ex. 18; Ex. 11 at 26*).

Later that month, ATRS again forged documents that were sent via U.S. mail to remove bins belonging to SVdP, Planet Aid, and IICD from Bloomfield Town Square, which is located at 2343 South Telegraph Road in Bloomfield Hills. (*Exhibit 20, Nov. 27, 2012, Letter to SVdP; Exhibit 21, Nov. 27, 2012, Letter to Planet Aid; Exhibit 22, Nov. 27, 2012, Letter to IICD; Exhibit 23, Nov. 28, 2012, Email from Spath*).  The Plaintiffs' bins in Jackson and Bloomfield Hills, along with their contents, were eventually removed, although one of Planet Aid's bins remain.  Plaintiffs are unaware of where their bins were taken.  (*Ex. 2; Ex. 4; Ex. 6*).

On December 13, 2012, IICD sent a letter to James Ball and JA Hauling informing him of the proper Michigan address to send correspondence to IICD Michigan, and that if IICD donation bins needed to be removed, IICD had the truck and equipment necessary to do so on its own.  (*Exhibit 24, Dec. 13, 2012, IICD Letter to JA Hauling*).  On December 31, 2012, the attorney for IICD sent a cease and desist letter to JA Hauling and James Ball demanding that he stop stealing IICD's bins.  (*Exhibit 25, IICD Cease and Desist Letter*).  Still, the enterprise continued, as ATRS targeted IICD bins in Brighton and Milford and sent letters through the U.S. mail to further the fraudulent enterprise.  (*Exhibit 26, Jan.*

*14, 2013, Letter to IICD; Exhibit 27, Jan. 14, 2013, Letter to IICD about Prospect Hill*).  Those bins belonging to IICD were stolen.  (*Ex. 6*).

On January 16, 2013, Mr. Spath informed JA Hauling that he was going to send letters calling for the removal of nine (9) donation bins in the Brighton/South Lyon area, and eleven (11) more in Lincoln Park and Roseville.  (*Exhibit 28, Jan. 16, 2013, Spath Email*.)  Among the bins in Lincoln Park were several belonging to Plaintiffs at the Lincoln Park Shopping Center at 1812 Dix Highway.  (*Ex. 2; Ex. 4*).  The property owner at this location informed Patrick Bennett of ATRS that she wanted to rescind her prior permission to remove Plaintiffs' bins from the property until further notice, which included a post-dated removal notice.  (*Exhibit 29, Jan. 17, 2013, Email to ATRS*).  Patrick Bennett then attempted to convince the property owner to rescind permission for Plaintiffs to keep their bins on the property, to no avail.  (*Exhibit 30, January 21, 2013, Email from ATRS to Grand Sakwa*).

Even though ATRS never heard back from the property owner, it still sent out fraudulent letters on the JA Hauling letterhead ATRS had prepared through the U.S. mail to SVdP and Planet Aid  indicating they had to remove their bins from the Lincoln Park Shopping Center.  (*Exhibit 31, Letter to SVdP; Exhibit 32, Letter to Planet Aid*).  Upon information and belief, ATRS fraudulently photocopied the signature of the Lincoln Park property owner onto additional

removal documents, which were then sent to Plaintiffs through the U.S. mail. (***Exs. 31-32***).  ATRS eventually removed the donation bins belonging to SVdP at the Lincoln Park Shopping Center.  (***Ex. 2***).

On February 21, 2013, Mr. Spath informed Mr. Ball that ATRS had targeted Planet Aid bins in Milford (510 Highland Avenue) and in Lincoln Park.  (***Exhibit 33, Feb. 21, 2013, Email from ATRS***).  Just the day before, another ATRS employee had told Mr. Ball that Planet Aid had just placed a donation bin in Lincoln Park and that ATRS had already sent a letter via U.S. mail to fraudulently inform Planet Aid that the bin needed to be removed.  (***Exhibit 34, February 20, 2013, Email; Exhibit 35, Removal Notice to Planet Aid***).  Planet Aid is unaware of the whereabouts of these bins.  (***Ex. 4***).

By March of 2013, ATRS and JA Hauling were aware that the Milford Police Department had been investigating whether donation bins had been improperly removed from a property in Milford.  (***Exhibit 36, March 5, 2012, Email***).  After Mr. Ball informed Mr. Spath that he had spoken with the investigator and all was well, Mr. Spath responded: "Hope that alleviates some of your fears….told you we knew what we were doing." (***Exhibit 37, March 6, 2013, Email***).  The enterprise continued the following week, when ATRS directed JA Hauling to remove a blue SVdP donation bin at the South Allen Shopping Center, located at 15411 Southfield Road in Allen Park, and sent another fraudulent letter

through the U.S. mail.  (***Exhibit 38, JA Hauling Paperwork dated March 12, 2013***).

On or about April 1, 2013, SVdP learned from one of its drivers that its donation bin at ThunderBowl Lanes, located at 4200 Allen Road in Allen Park, had been removed and all that was remained was the cutoff locks.  (***Exhibit 39, Pictures; Ex. 2***).  Several days later, SVdP received a letter sent by JA Hauling via U.S. mail that fraudulently stated that the permission to place SVdP's donation bins had been withdrawn and SVdP had 72 hours to remove the bin from the location.  (***Ex. 2, Ex. 40, Letter to SVdP***).  Despite having knowledge of the address of SVdP's Detroit location, ATRS sent the letter to the Society of St. Vincent De Paul headquarters in St. Louis, Missouri.  (***Ex. 40***).  By the time the Detroit office received the letter, JA Hauling had already removed the bins.  (***Ex. 2***).  Thereafter, SVdP contacted ThunderBowl Lanes, who confirmed that SVdP had permission to place its bin at the property.  ***Id.***  ThunderBowl Lanes then allowed SVdP to place another bin on the property to replace the bin ATRS had fraudulently removed.  ***Id***.

On or about April 3, 2013, Larry Griffin, an SVdP representative, spoke to Mr. Ball and informed him that SVdP had never received calls from JA Hauling, as the letters claimed.  ***Id***.  Mr. Griffin further indicated that he had not received the letters in time because they had been sent to SVdP's corporate office in St. Louis.

(*Ex. 11, Bell Dep. 46:13-18*).  Mr. Griffin also informed Mr. Ball of the significant monetary value of the bins and their contents, and requested that Mr. Ball contact Mr. Griffin directly should Mr. Ball be asked to remove any SVdP bins in the future, and SVdP would immediately remove their bins.  *Id. 46:21-24*.  Mr. Ball indicated that it would not be a problem to return SVdP's bins if he was in the Detroit area, and then relayed this message to Mr. Spath or Mr. Pringle.  *Id. 46:23-24*.  In response, Mr. Spath informed Mr. Ball "that that wasn't necessary. They were given the 72 hours and that that was not the agreement."  *Id. 47:16-18*.

On or about April 16, 2013, ATRS directed James Ball to carry out the removal of IICD's donation bin from 200 Capital SW, Battle Creek, and the removal of SVdP's donation bin outside the Wal-mart at 3301 Pontiac Trail, in Commerce Township.  (*Exhibit 41, April 16 Email from ATRS*).  Neither SVdP nor IICD know the whereabouts of their donation bins that were taken from Commerce Township and Battle Creek respectively in on or about April 15, 2013. (*Ex. 2; Ex. 6*).

On or about May 14, 2013, SVdP's counsel sent JA Hauling a cease and desist letter requesting that JA Hauling return all of SVdP's bins that it had removed.  (*Exhibit 42, Cease and Desist Letter*).  Mr. Ball received the letter and submitted it to Mr. Spath, who indicated he was forwarding it to the corporate office.  (*Ex. 11, Ball Dep. 34:10-20*).  However, SVdP never received a response

from either Mr. Ball or ATRS.  Rather, Mr. Spath simply informed Mr. Ball that the letter "was a scare tactic."  *Id. 34:24-25.*  Planet Aid also sent a cease and desist letter to JA Hauling.  (*Ex. 4*).

On or about June 18, 2013, SVdP and Planet Aid received letters regarding their bins at the CVS on 66 E. Walton in Pontiac.  (*Exhibit 43, CVS Pontiac letter*).  SVdP sent a certified letter to the CVS at this location on June 3, 2013, inquiring as to whether or not the business wished to continue allowing SVdP to place its bin at that site.  (*Exhibit 44, SVdP Letter to CVS*).  To date, SVdP had not received a response.  *Ex. 2*.  Sometime between July 5, 2013 and July 10, 2013, Plaintiffs' bins at CVS in Pontiac were removed.  *Id.; Exhibit 45, CVS Pictures*).  SVdP filed a report with the Oakland County Sheriff's Office, and Deputy McCann issued a report, Incident No. 13-111163.  (*Ex. 2*).  Planet Aid also filed a report with the Oakland County Sheriff's Office.  (*Ex. 4*).

In order to pay Mr. Ball for his participation in the enterprise, ATRS sent him checks made out to JA Hauling through the U.S. mail from its corporate office in Houston.  (*Ex. 11 at 14, 24; Exhibit 46, Check to JA Hauling*).  The checks sent from ATRS were from "Metroplex Distribution Corporation," which is related to ATRS.  (*Exhibit 47, Metroplex Distribution Corporation State Registration*).  David Peganyee, who is the president of ATRS, is also the President of Metroplex

Distribution Corporation. (***Ex. 48, Metroplex Distrubtion Corporation Officers and Directors***).

As part of the enterprise, ATRS also permitted Mr. Ball to keep the $30-$40 generated from scrapping each of Plaintiffs' donation bins at OmniSource. (***Ex. 11 at 20-21; Exhibit 49, Scrapyard Receipt***). Not all of Plaintiffs' bins that were stolen were scrapped. In March 2013, IICD found eight (8) of its donation bins that had been reported missing earlier that month had been dumped at the former Packard Plant in Detroit. (***Exhibit 50, Packard Plant Pictures***). In order to conceal the activities of the enterprise, ATRS directed Mr. Ball to write "garbage removal" on the invoices he sent to ATRS, and specifically directed Mr. Ball to refrain from indicating he had disposed of Plaintiffs' donation bins. (***Ex. 11 at 21, 51-52; Exhibit 51, JA Hauling Invoices to ATRS***).

To date, neither the donation bins removed by JA Hauling at ATRS' direction nor their contents has ever been located or returned to Plaintiffs, their rightful owners. (***Ex. 2; Ex. 4; Ex. 6***). As a result of the fraudulent scheme formulated by ATRS, Plaintiffs have been and continue to be denied the ability to collect donated materials at the locations where their removed bins were once located. ATRS has no intention of ceasing its fraudulent removal of Plaintiffs' bins. In fact, ATRS has been trying to schedule more bin removals in the coming weeks. (***Ex. 11, Ball Dep. 37:2-15***).

## STANDARD OF REVIEW

When determining whether to issue a preliminary injunction, a district court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction. *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 590-91 (6th Cir. 2012); *Karhani v. Meijer,* 270 F. Supp. 2d 926, 929 (E.D. Mich. 2003); *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citation omitted). None of these four factors is a prerequisite to the issuance of a preliminary injunction; rather, the Court's determination as to the requested injunctive relief is reached by balancing these factors against each other. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998) (citation omitted).

## LEGAL ARGUMENTS

### 1. Likelihood of Success on the Merits.

Initially, it is worth noting that injunctive relief is not available to private parties under the civil Racketeer Influence and Corrupt Organization Act, 18 U.S.C. § 1964 ("RICO"). *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1067, 1088 (9th Cir. 1986); *Colorado v. Idarado Mining Co.*, 916 F.2d 1486 (10th Cir.

1991).   For that reason, the civil RICO claim is not addressed in this Brief. However, the facts at hand show that Plaintiffs have demonstrated a strong likelihood of success on their other claims.

### (a) Trespass to Chattels.

Plaintiffs are likely to succeed on their claim against ATRS for trespass to chattels.  To establish a claim for trespass to chattels, also known as trespass to personalty, a plaintiff must show a wrongful exercise of dominion or control over the plaintiff's property.  *See Burns v. Kirkpatrick*, 51 N.W. 893 (Mich. 1892). "A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property."  *Mackie v. Bollore S.A.*, No. 286461, 2010 WL 673295, *4 (Mich. App. Feb. 25, 2010).

Here, there is no question that ATRS exercised wrongful dominion and control over several donation bins that were the property of Plaintiffs.  ATRS' wrongful removal and subsequent conversion of Plaintiffs' donation bins undeniably dispossessed Plaintiffs of their rightful personal property.  Further, ATRS' actions intentionally and harmfully interfere with Plaintiffs' personal property, as Plaintiffs no longer have access to the wrongfully removed donation bins or their contents, and Plaintiffs are now unable to utilize their bins to collect additional donations.  Therefore, Plaintiffs have a strong likelihood of success on the merits of their trespass to chattels claim against ATRS.

**(b) Conversion.**

Plaintiffs are also likely to succeed on their claim against ATRS for common law conversion.  The tort of conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."  *Foremost Ins. Co. v Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992).  Common law conversion is an intentional tort where the converter's acts are willful and dominion over the property was obtained without the owner's consent.  *Lawsuit Financial, LLC v. Curry*, 683 N.W.2d 233, 240 (Mich. App. 2004).  Conversion occurs at the point wrongful dominion is exerted. *Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917, 919 (Mich. App. 2001).

The facts make clear that ATRS has wrongfully exerted control over the personal property of Plaintiffs.  Furthermore, this wrongful control denies Plaintiffs the rights to their lawful property.  In addition, the communications between Mr. Spath and Mr. Ball clearly indicate that ATRS acted willfully when it directed JA Hauling to physically remove Plaintiffs' donation bins and convert the bins into scrap metal.  It is clear that ATRS acquired Plaintiffs' property without the consent of SVdP, Planet Aid, or IICD.  Consequently, Plaintiffs' likelihood of success on their common law conversion claim is extremely strong.

### (c) Statutory Conversion.

There is also a strong likelihood that Plaintiffs will succeed on their claim of statutory conversion. Michigan's statutory conversion provision reads as follows:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use,

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property know that the property was stolen, embezzled, or converted.

MCL 600.2919a(1). Relief under a statutory conversion claim "is in addition to any other right or remedy the person may have at law or otherwise." MCL 600.2919a(2). The language of Section 600.2919(a) indicates that "[t]he actions proscribed by the statute - buying, receiving, or aiding in the concealment - all occur after the property has been stolen, embezzled, or converted." *Campbell v. Sullins,* 667 N.W.2d 887, 896 (Mich. App. 2003) (quoting *Marshall Lasser, PC v. George,* 651 N.W.2d 158, 163 (Mich. App. 2002)).

The instant situation falls squarely in line with the statutory language. ATRS unquestionably aided in the concealment of it having received Plaintiffs' stolen donation bins, even though ATRS has stated to Planet Aid that it "can guarantee you that ATRS does not touch anyone else's boxes. I don't know where

20

any of them are." (*Ex. 14*).  This, of course, is untrue, as Mr. Spath and ATRS are well aware that the enterprise they created has stolen and converted many of Plaintiffs' donation bins as highlighted above.  It was ATRS that instructed Mr. Ball to take the unlawfully removed bins to local scrap yards and to submit the receipts Mr. Ball obtained after scrapping the bins as evidence of his completing the job.  (*Ex. 11, Ball Dep. 19:24-20:7*; *21:24-22:2*).  Therefore, Plaintiffs have demonstrated there is a strong likelihood they will succeed on their claim for statutory conversion against ATRS.

### (d) Tortious Interference with Business Relationship.

Plaintiffs also will likely succeed on the merits of their claim for tortious interference with a business relationship.

To demonstrate a claim for tortious interference with a business relationship, plaintiffs must demonstrate four elements: 1) the existence of a valid business relationship or expectancy; 2) knowledge of the relationship or expectancy on the part of the defendant; 3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and 4) resulting damage to the plaintiffs.  *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 924-25 (Mich. App. 1996).  In order to maintain this claim, the relationship or expectancy must be a reasonable likelihood or probability, not mere wishful thinking.  *Trepel v. Pontiac Osteopathic Hosp.*, 354 N.W.2d 341, 348

(Mich. App. 1984).  Moreover, a plaintiff alleging a valid business relationship or expectancy must *identify* that relationship.  *See Victory Lane Quick Oil Change, Inc. v. Hoss*, 659 F. Supp. 2d 829, 839 (E.D. Mich. 2009).  Unlike tortious interference with a contractual relationship, a cause of action for tortuous interference with a business relationship or expectancy does not require the plaintiff to demonstrate a contractual relationship with the third party.  *Bonelli v. Volkswagen of Am., Inc*., 421 N.W.2d 213, 220 n.4 (Mich. App. 1988).

Here, Plaintiffs had valid business relationships with either the property owners or the businesses where all of their donation bins were located.  Further, the relationship between Plaintiffs and these entities is not mere wishful thinking; rather, the property owners and businesses have allowed Plaintiffs to place their donation bins in open, conspicuous locations at these sites for extended periods, often for several years.  Additionally, Plaintiffs maintained the bins and picked up donations on a weekly basis.  Thus there is a clearly established valid business relationship between Plaintiffs and the property owners and/or businesses where its donation bins are located.   Second, ATRS clearly had knowledge of this expectancy because ATRS contacted these entities in an effort to persuade the property owners or business managers to revoke Plaintiffs' permission to locate their bins at these sites.  Third, the facts make clear that ATRS intentionally interfered with this relationship which thereby caused the property owners or

businesses to revoke Plaintiffs' permission to place bins at those locations.  Fourth, Plaintiffs have unquestionably suffered damage as a result of ATRS's actions. Plaintiffs have lost the value of the donation bins that ATRS has unlawfully converted as well as the contents of those bins.  Further, Plaintiffs have lost and continue to suffer damage because they are no longer able to collect donations at these sites after ATRS improperly removed their donation bins.

Thus, there is a strong likelihood that Plaintiffs will succeed on their claim of tortious interference with a business relationship.

## 2. Irreparable Harm

Plaintiffs will suffer irreparable injury if the injunction does not issue.

"A finding of irreparable harm is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction." *Wells Fargo & Co. v. WhenU.com, Inc.,* 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003) (citations omitted).  Such harm must be "actual and imminent," rather than "speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir. 2006).

Plaintiffs will suffer actual and imminent irreparable harm if an injunction does not issue.  ATRS's egregious actions have already deprived Plaintiffs of their personal property – both their donation bins as well as their contents.  In addition, ATRS's actions have deprived and continue to deprive Plaintiffs of the ability to

gather more donations.  There is also absolutely no indication that ATRS will cease its unlawful actions unless it is compelled by law to do so.  (***Ex. 11, Ball Dep. 37:2-15***).

Thus, Plaintiffs will suffer irreparable harm if an injunction does not issue.

### 3. The Balancing of Hardships Tips in Plaintiffs' Favor and an Injunction Serves the Public Interest.

The balance of hardships tips in favor of Plaintiffs and the issuance of the requested preliminary injunction would serve the public interest.

If an injunction were to issue, ATRS would not face any hardship; it would simply be forced to comply with the law like everyone else.  In stark contrast, Plaintiffs will face significant hardship if an injunction does not issue.  Plaintiffs will continue to be deprived of the donation bins that have already been converted, their contents, and the donations that said bins would obtain if they had not been removed.

More critically, ATRS's past actions and Mr. Ball's testimony make clear that ATRS will almost certainly continue its unlawful removal of Plaintiffs' donation bins.  (***Ex. 11, Ball Dep. 37:2-15***).  Such action would further deprive Plaintiffs of their personal property (the bins and their contents) as well as deprive Plaintiffs of the ability to obtain future donations after the bins are removed.

Thus, Plaintiffs' requested injunction would serve the public interest.

## CONCLUSION

The evidence herein shows that Plaintiffs have demonstrated all four elements necessary in order for this Court to issue a preliminary injunction to halt Defendant ATRS' unlawful removal of Plaintiffs' donation bins.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court GRANT their Motion for Preliminary Injunction and issue an Order that enjoins Defendant ATRS from removing any of Plaintiffs' donation bins from their proper locations. Additionally, Plaintiffs request this Court award the equitable relief, attorney fees and costs Plaintiffs incurred in maintaining this claim; and grant such other equitable relief the Court deems appropriate.

Respectfully Submitted,

**DALTON & TOMICH, plc**

By:/s/ Daniel P. Dalton
Attorney for Plaintiffs
41000 Woodward Ave., Ste. 345 East
Bloomfield Hills, MI 48304
(248) 971-2400
ddalton@daltontomich.com

Dated: October 7, 2013

### Certificate of Service

I HEREBY CERTIFY that I have on this 7th day of October, 2013, served a copy of the foregoing on counsel for all parties to this proceeding by operation of the Court's CM/ECF system.

_/s/ Daniel P. Dalton_
Attorney for Plaintiff