## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SOCIETY OF ST. VINCENT DE
PAUL IN THE ARCHDIOCESE
OF DETROIT, a Michigan Nonprofit
Organization, PLANET AID, a
Massachusetts Nonprofit Corporation,
And INSTITUTE FOR INTERNATIONAL
COOPERATION AND DEVELOPMENT,
MICHIGAN, a Michigan Nonprofit Corporation,

                    Plaintiffs,

v.                                      Case No. 13-CV-14004
                                  Honorable Denise Page Hood

AMERICAN TEXTILE RECYCLING
SERVICES, d/b/a ATRS, a Houston
Corporation,

                    Defendant.

_____/

## ORDER GRANTING PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION [#10] AND GRANTING DEFENDANT ATRS'S MOTION FOR LEAVE TO FILE SUR-REPLY [#25]

## I.    INTRODUCTION

      This matter involves a request for injunctive relief, enjoining Defendant

American Textile Recycling Service ("ATRS") from "unlawfully removing Plaintiffs'

donation bins and converting bins and their contents."  Before the Court is Plaintiffs'

Amended Motion for Preliminary Injunction.  **[Docket No. 10, filed October 7, 2012]**

Defendant filed a response in opposition to Plaintiffs' motion, **[Docket No. 20, filed November 11, 2013]**, to which Plaintiffs filed a reply. **[Docket No. 23, filed November 17, 2013]**

The Court held a hearing on Plaintiffs' October 7, motion, on November 20, 2013, at 3:30 p.m. At this hearing, Defendant requested that the Court also hear it on its Motion for Leave to File Sur-Reply. **[Docket No. 25, filed November 19, 2013]** Plaintiffs filed a response to Defendant's November 19, motion, **[Docket No. 28, filed December 5, 2013]**, to which Defendant filed a reply in support of its motion. **[Docket No. 29, filed December 10, 2013]**

For the reasons discussed below, after having heard argument on the issues and having reviewed the motions, Plaintiffs' Amended Motion for Preliminary Injunction is **GRANTED**. Defendant ATRS's Motion for Leave to File Sur-Reply is also **GRANTED**.

## II.    BACKGROUND

Plaintiffs, Society of St. Vincent De Paul in the Archdiocese of Detroit (SVdP"), a 501(c)(3) nonprofit organization and Michigan nonprofit organization, and Planet Aid, a 501(c)(3) nonprofit organization and Massachusetts nonprofit organization, filed the present action in this Court on September 18, 2013. **[Docket**

2

**No. 1]**  On September 19, 2013, Plaintiffs filed a First Amended Verified Complaint, **[Docket No. 3]**, on September 20, 2013, Plaintiffs filed a Second Amended Complaint, **[Docket No. 6]**, and on October 7, 2013, Plaintiffs filed a Third Amended Complaint, this time adding the Institute for International Cooperation and Development Michigan ("ICD"), a Michigan nonprofit organization, as a new party plaintiff.  The action was brought against Defendant, ATRS, alleging violation of: Civil Racketeer Influenced and Corrupt Organizations Act (RICO"), 18 U.S.C. § 1962(c) (Count I); RICO, 18 U.S.C. 1962(b) (Count II); RICO, 18 U.S.C. 1962(d) (Count III); Trespass to Chattels (Count IV); Conversion (Count V); Statutory Conversion, M.C.L. § 600.291a (Count VI); Claim and Delivery (Count VII); and Tortious Interference with Business Relationship (Count VIII).  Plaintiffs request that this Court grant their Motion for Preliminary Injunction and order that Defendant is enjoined from "unlawfully removing Plaintiffs' donation bins and converting bins and their contents;" grant Plaintiffs exemplary, compensatory, and nominal damages, as well as treble damages, pursuant to 28 U.S.C. § 2202, Fed. R. Civ. P. 65, and 18 U.S.C. § 1964(c); award Plaintiffs attorney fees and costs pursuant to 18 U.S.C. § 1964(c); and grant such other and further relief as the Court deems proper.

Plaintiffs allege the following: Plaintiffs are nonprofit, charitable organizations that collect and recycle used clothing and shoes.  SVdP carries out its mission by

3

placing donation bins on private property, with permission from the owners or
businesses operating on the property, "to ultimately benefit the poor in and around
Michigan, as well as other states and, in some cases, other countries." **[Compl. ¶ 12]**
Similarly, Plaintiff, Planet Aid, collects used clothing, household goods, and textiles
in order to "improve health, aid vulnerable children, and reduce poverty in
innumerable communities." **[Compl. ¶ 14-15]**  Planet Aid asks for and receives
permission from a property owner or manager to place the collection bins. **[Compl.
¶ 16]** Plaintiff ICD places donation bins in several Michigan communities "to collect
and recycle used clothing and shoes in order to improve health, aid vulnerable
children, and reduce poverty in Southern Africa, which is where many of the
donations to [ICD] are ultimately distributed." **[Compl. ¶ 18]**

Plaintiffs allege that over the past year, ATRS, a for-profit company based in
Houston, Texas, "devised, directed, and carried out a fraudulent scheme in violation
of the Civil Racketeer Influenced and Corrupt Organizations Act, or RICO. 18 U.S.C.
§ 1961 et seq." Plaintiffs contend that ATRS also collects used clothing in donation
bins placed on select properties, and ATRS was "in direct competition with Plaintiffs
and sought to increase donations to its bins." Because of this competition, Plaintiffs
argue that Defendant "teamed with James Ball of Jackson, Michigan to form an
enterprise that would be carried out by an unincorporated business operating under an

4

assumed name, JA Hauling . . . [to] identify locations where it wished to place its own donation bins." If Defendant found that Plaintiffs already had donation bins at locations of interest to Defendant, Plaintiffs assert that Defendant would "seek out the property owners or managers and convince them to sign letters rescinding permission for Plaintiffs to have their bins on those properties." Plaintiffs contend that this did not always work as some property owners would not actually revoke Plaintiffs' permission to maintain donation bins at these locations.

Further, Plaintiffs complain that ATRS would "draft letters, sometimes fraudulently, then fraudulently photocopy the signatures of property owners when necessary, and send letters through the U.S. mail to Plaintiffs indicating they needed to remove their bins." Plaintiffs assert that the letters "fraudulently stated" that they were written on behalf of JA Hauling, the unincorporated business which Plaintiffs claim was the enterprise through which Defendant worked, when Defendant had in fact drafted and sent the letters. Plaintiffs argue that the letters would notify them that they had 72 hours to remove their donation bins from various locations. However, Plaintiffs assert that in most cases, Defendant would intentionally send these letters on Thursday so that Plaintiffs would not receive the letters until the following week, after JA Hauling had already moved their bins, disposed of the donated contents that were inside, and sold their bins for scrap, without Plaintiffs ever having any

5

knowledge of where the bins were and how they could retrieve them. Plaintiffs claim that Defendant directed Mr. Ball, the owner of JA Hauling, to "actively conceal" Defendant's involvement and, in exchange, Mr. Ball was paid $150 for each bin that he removed as well as whatever amount he was paid to scrap the bins. Plaintiffs argue that Defendant would pay Mr. Ball by check through U.S. mail and that Mr. Ball would submit "fraudulent invoices" that concealed the real work that he was doing for Defendant.

Plaintiffs complain that Defendant "crossed state lines and used the U.S. mail system to carry out and further this fraudulent enterprise that interferes with interstate and international commerce, in violation of the Civil RICO statute." Plaintiffs further contend that as a result of Defendant's actions, they have had to incur tens of thousands of dollars in damages because of their stolen (and likely scrapped) bins, the donated items the bins contained, and lost donations after the bins were stolen, denying people the ability to make donations.

### III.   ANALYSIS

#### 1.        Motion to File Sur-Reply

On November 19, 2013, Defendant filed Defendant A.T.R.S., Inc.'s Motion for Leave to File Sur-Reply. **[Docket No. 25]** Because the Court must decide whether to consider this motion (as well as the response and reply that followed) in

6

determining whether to grant or deny Plaintiffs' Amended Motion for Preliminary Injunction, the Court must first grant or deny Defendant's motion.  For the reasons discussed below, the Court grants Defendant's motion.

In this Motion, Defendant contends that in Plaintiffs' reply following Defendant's response to Plaintiffs' Amended Motion for Preliminary Injunction, Plaintiffs "ma[d]e allegations regarding placement of donation bins at a Family Dollar location outside of this district in Vicksburg, Michigan."  Defendant claims that these allegations were "brand new" and that Plaintiffs "materially misstate the facts relative to the Vicksburg bins; specifically, Plaintiffs—relying on a declaration executed by a former manager of the Family Dollar in question—alleged that ATRS recently placed a donation bin at that location without permission."   Defendant argues that it received permission to place the bin from both the previous manager, Brittany Beebe, as well as the current store manager Donnie Howe.  Defendant also attaches a Declaration from Catherine Sutter **[Ex. A]**, ATRS's Community Relations Advocate, a copy of an agreement with previous store manager Brittany Beebe dated May 9, 2013 **[Ex. A]**, a copy of an agreement with current store manager Donnie Howe dated October 28, 2013 **[Ex. A]**, and a Declaration from Mr. Howe **[Ex. B]**.

Plaintiffs filed a response to Defendant's motion on December 5, 2013.  In the response, Plaintiffs argue that their reference to the Vicksburg bin, which Plaintiffs

allege was not stolen until "nearly six weeks after the complaint was filed and could not have been raised in the filing of the injunction," was in response to Defendant not complying with the statement made by its President that "it would seek property owner consent before placing a bin on property" and Defendant's argument that this Court should not grant Plaintiffs' preliminary injunction request because it has "voluntarily agreed to stop stealing bins and stop illegally dumping bins on property without the property owner[']s consent." Further, Plaintiffs contend that Defendant has not disputed that a bin was stolen in Monroe, did not address dumping bins in the Packard Plant, and did not address its failure to comply with the Michigan Charitable Organizations and Solicitations Act. On December 10, 2013, in response to Plaintiffs' arguments, Defendant filed a reply in which it addressed Plaintiffs arguments and, in sum, stated that "because Plaintiffs' Response admitted that they introduced new evidence in their Reply, this Court should allow ATRS to rebut Plaintiffs' new (and false) allegations through the filing of a short sur-reply."

"[T]he decision to grant or deny leave to file a sur-reply is committed to the sound discretion of the court." *Nolan LLC v. TDC Int'l Corp.*, 06-14907, 2009 WL 1583893 (E.D. Mich. June 5, 2009) (quoting *Flynn v. Veazey Construction Corp.*, 310 F. Supp. 2d 186, 189 (D.D.C. 2004)). Because the Court is satisfied that in this instance, Plaintiffs presented new evidence subsequent to all papers being filed, to

8

which Defendant did not have the opportunity to respond in writing, and because the Court also accepts Plaintiffs' response in opposition which addresses any arguments Defendant may have made, a sur-reply is appropriate.   Accordingly, Defendant A.T.R.S., Inc.'s Motion for Leave to File Sur-Reply, **[Docket No. 25]**, is **GRANTED**.

### 2. Preliminary Injunction Standard

Next, the Court must determine whether it should grant Plaintiffs' motion for a preliminary injunction.   To determine the appropriateness of a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, the Court must balance and consider four factors: 1) the likelihood of the plaintiffs' success on the merits; 2) whether plaintiffs will suffer irreparable injury without the injunction; 3) the balance of harm to others that will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *See Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001); *In re Eagle-Pitcher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); *Lucero v. Detroit Pub. Sch.*, 160 F. Supp. 2d 767, 778-79 (E.D. Mich. 2001).   Specific findings must be made as to each factor unless fewer factors would be dispositive of the issues. *Bonnell*, 241 F.3d at 809; *Lucero*, 160 F. Supp. 2d at 778.

A finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction, where the movant has at minimum shown serious harm that

9

decidedly outweighs any potential harm to the defendant if the injunction is issued. *Gaston Drugs, Inc., v. Metro. Life Ins., Co.*, 823 F.2d 984, 988 n.2 (6th Cir. 1987); *Lucero*, 160 F. Supp. 2d at 778.  The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. *Washington v. Reno*, 35 ftlineF.3d 1093, 1099 (6th Cir. 1994).  Thus, no single factor will be determinative as to the appropriateness of equitable relief.  *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985) (citing *Metro. Detroit Plumbing & Mech. Contractors Ass'n v. Dep't of Health, Educ. & Welfare*, 418 F. Supp. 585, 586 (E.D. Mich. 1976)).

A preliminary injunction is meant to preserve the relative positions of the parties pending a resolution on the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  To be granted a preliminary injunction, plaintiffs must demonstrate specific harm and the likelihood of success on the merits.  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  A showing of a 'possibility' of success on the merits is insufficient. *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987).  Rather, the movant must show "serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendants if an injunction is issued."  *In re Delorean*, 755 F.2d at 1229.

**1.     Success on the Merits**

10

Plaintiffs first argue that the Court should grant their Motion for Preliminary Injunction because they will have success on the merits.[1]  Defendant argues that Plaintiffs "cannot prevail" because ATRS's sponsors "expressly authorized JA Hauling to remove the improper bins."  Plaintiffs make five claims for relief: trespass to chattels, conversation, statutory conversion, claim and delivery, and tortious interference with a business relationship.  The Court discusses each claim separately below.

### i.      Trespass to Chattels

Under Michigan law, to establish a claim for trespass to chattels, a plaintiff must show a wrongful exercise of dominion or control over the plaintiff's personal property.  *Nieporte v. Citimorgage, Inc.*, 11-10940, 2011 WL 3032331, at *3 (E.D. Mich. July 25, 2011) (citing *Burns v. Kirkpatrick*, 91 Mich. 364, 51 N.W. 893 (1892)).  "A trespass to chattels is actionable if one dispossesses another of or intentionally and harmfully interferes with another's property."  *Livonia Prop. Holdings, L.L.C. v.*

---

[1] The Court notes, as both Plaintiffs and Defendant noted, that though Plaintiffs allege RICO violations in their Complaint, they correctly do not request injunctive relief on these claims.  *See Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986) (stating that "injunctive relief is not available to a private party in a civil RICO action").  The Court will address Plaintiffs' remaining claims, Trespass to Chattels (Count IV), Conversion (Count V), Statutory Conversion, M.C.L. § 600.291a (Count VI), Claim and Delivery (Count VII), and Tortious Interference with Business Relationship (Count VIII), for purposes of determining whether to grant injunctive relief.

*12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 739 (E.D. Mich. 2010), aff'd sub nom. *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010) (citing *Mackie v. Bollore S.A.,* No. 286461, 2010 WL 673295 (Mich. App. Feb. 25, 2010)).

Here, Plaintiffs contend that there is "no question that ATRS exercised wrongful dominion and control over several donation bins that were the property of Plaintiffs." Plaintiffs argue that Defendant was aware that the donation boxes belonged to them because the boxes were "clearly marked" and "were properly located on private property with permission of landlords and/or site managers of the business." Defendant ATRS concedes that it moved and disposed of various donation boxes that were owned by Plaintiffs but argues that removal of these boxes were by request, through written agreements with the property owners on whose property the boxes were placed, and were completed with consent of those owners. Further, Defendant argues that Plaintiffs were given notice of removal by letter before removal took place.

The Court is not convinced, based on the evidence provided by both Plaintiffs and Defendant, that Defendant "wrongfully" exercised dominion or control over the Plaintiffs' personal property in every allegation of removal. However, the Court is satisfied that Defendant's decision to remove and dispose of these boxes while

12

refusing to return the property, notify Plaintiffs of how they could recover the property, and disposing of the contents within these donation boxes, may constitute a trespass to chattels.  Accordingly, the Court determines that Plaintiffs would likely succeed on the merits of this claim.

### ii.    Conversion and Statutory Conversion

In Michigan, the elements of conversion are (1) "any distinct act of domain," (2) "wrongfully exerted," (3) "over another's personal property," and (4) "in denial of or inconsistent with the rights therein."  *Schiff v. Investors Network Fund, LLC*, 09-14031, 2012 WL 113468, at *6 (E.D. Mich. Jan. 13, 2012) (citing *Head v. Phillips Camper Sales and Rental, Inc.*, 234 Mich. App. 94, 593 N.W.2d 595, 603 (Mich. Ct. App.1999)).  "[A] statutory claim of conversion consists of knowingly buying, receiving, or aiding in the concealment of stolen, embezzled, or converted property."  *Schiff*, 09-14031, 2012 WL 113468, at *6 (E.D. Mich. Jan. 13, 2012) (citing *Olympic Forest Products, Ltd. v. Cooper*, 148 Fed. Appx. 260, 265 (6th Cir. 2005); (citing Mich. Comp. Laws § 600.2919a)).  "The two torts of conversion and trespass to chattels are similar," *Nieporte*, 2011 WL 3032331, at *3, and the Court construes them as such.  For the same reasons that the Court determines likelihood of success on the merits on Plaintiffs' trespass to chattels claim, the Court determines likelihood of success on the merits of these claims.

### iii.    Claim and Delivery

Plaintiffs also make a claim of claim and delivery.  Specifically, Plaintiffs contend that Defendant "directed James Ball, through JA Hauling, to unlawfully remove and detain Plaintiffs' donation bins and the goods contained therein, or otherwise recycle same."  An action for claim of delivery seeks to recover possession of goods or chattels unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or detention.  *Computer Leasco, Inc. v. Volvo White Truck Corp.*, 820 F. Supp. 326, 331 (E.D. Mich. 1993) (citing M.C.L. § 600.2920). The Court notes that it is again satisfied that Defendant took possession of goods belonging to Plaintiffs and that there is still question as to whether these takings were lawful.  Based on the evidence presented to the Court, the Court deems Plaintiffs are likely to succeed on the merits of this claim.

### iv.    Tortious Interference with Business Relationship

Plaintiffs' last claim is one for tortious interference with a business relationship. Under Michigan law, a plaintiff must establish the following elements to prevail on a tortious interference with a business relationship claim:

> the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or

14

> expectancy on the part of the defendant interferer; (3)
> an intentional interference inducing or causing a
> breach or termination of the relationship or
> expectancy; and (4) resulting damage to the party
> whose relationship or expectancy has been disrupted.

*Clark v. West Shore Hospital*, 16 Fed. Appx. 421, 430 (6th Cir. 2001) (quoting

*Michigan Podiatric Med. Ass'n v. National Foot Care Program, Inc.*, 175 Mich. App.

723, 438 N.W.2d 349, 354 (1989)).   The third element requires more than just

purposeful or knowing behavior on the part of the defendant.  *Id.*  The plaintiff must

also allege that the interference was either (1) a per se wrongful act or (2) a lawful act

done "with malice and unjustified in law for the purpose of invading the contractual

rights or business relationship of another."  *Id.* (quoting *Feldman v. Green*, 138 Mich.

App. 360, 360 N.W.2d 881, 891 (1984)).  "Where the defendant's actions were

motivated by legitimate business reasons, its actions would not constitute improper

motive or interference."  *BPS Clinical Labs. v. Blue Cross and Blue Shield of Mich.*,

217 Mich. App. 687, 552 N.W.2d 919, 925 (1996).

Based on the evidence presented to the Court, the Court determines that

Plaintiffs have satisfied the requirements of a claim for tortious interference with a

business relationship in as much as there is a likelihood of success on the merits of the

claim.  Plaintiffs contend that they had permission from various independent business

owners to place their donation bins on business owners' private property which

15

created "a reasonable business expectancy that they would be allowed to maintain their donation bins at these locations and derive economic gain on a weekly basis." Plaintiffs argue that Defendant "intentionally and improperly interfered with [their] business expectancy by actively contacting the owners of the properties where [their] donation bins were located and offering to remove the bins free of charge." The Court is satisfied that these allegations show the existence of a valid business relationship, knowledge of the relationship on the part of Defendant (the bins bearing Plaintiffs' name), an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resulting damage to Plaintiffs.

For these reasons, the Court determines that Plaintiffs are likely to succeed on the merits of this claim.

## 2.    Irreparable Injury Without the Injunction

A specific finding of irreparable injury to the movants is the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction. *See MetroBanc v. Fed. Home Loan Bank Bd.*, 666 F. Supp. 981, 984 (E.D. Mich. 1987) (citations omitted). The absence of irreparable injury must end this Court's inquiry. *Id.* (citing *Aluminum Workers Int'l Union v. Consolidated Aluminum Corp.*, 696 F.2d 437, 444 (6th Cir. 1982); *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 876 (6th Cir. 1972)).

16

The moving party must demonstrate a noncompensable injury, "for which there is no legal measure of damages, or none that can be determined with a sufficient degree of certainty." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. E. F. Hutton & Co., Inc.*, 403 F. Supp. 336, 343 (E.D. Mich. 1975) (citing 4 Pomeroy, Treatise of Equity Jurisprudence, Sec. 1401, at 1033-34)). The injury must be "both certain and great," it must be actual, and "not merely theoretical." *Id.* (internal citations omitted). A plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Here, Plaintiffs contend that they will suffer "actual and imminent irreparable harm if an injunction does not issue" because Defendant's actions "have already deprived Plaintiffs of their personal property—both their donation bins as well as their contents." Additionally, Plaintiffs contend that Defendant ATRS's actions have deprived and continue to deprive them of the "ability to gather more donations." In response, both at the hearing and in its response in opposition, Defendant contends that it has not unlawfully removed bins and further, that it "will refrain from facilitating the removal of any bins while this litigation is pending."

The Court is satisfied that Plaintiffs will suffer irreparable harm if an injunction is not issued. First, though Plaintiffs have quantified the cost of the actual donation boxes to be $1,300, neither Plaintiffs nor Defendant were able to answer the Court's

17

question as to the value of the items that were inside of the bins when they were removed and disposed of. Second, the Court is satisfied that there is no way to determine the loss of donations Plaintiffs have suffered since the removal of the bins because there is no way to determine how many people would have donated and how many items would have been placed in each box each day.

Lastly, the Court recognizes Defendant's promise to "refrain from facilitating the removal of any bins while this litigation is pending." The Court also notes Defendant's concern voiced at the November 20, hearing that if an injunction is issued, it will be called to Court to show cause each time one of Plaintiffs' donation boxes goes missing. The Court understands this concern. However, because Defendant has already agreed that it will refrain from removing Plaintiffs' donation bins, the Court is not satisfied that Defendant's concern outweighs the possibility of irreparable harm to Plaintiffs nor that Defendant will be prejudiced by entry of this Order. To alleviate this concern, the Court will require Plaintiffs to provide the Court with a list of all locations where Plaintiffs have placed a donation bin.

### 3.   Balance of Harm to Others and Public Interest

The Court is sufficiently satisfied that the balance of harm weighs in favor of granting Plaintiffs' motion for preliminary injunction if for no other reason than the fact that Defendant has stated that it "will refrain from facilitating the removal of any

bins while this litigation is pending." This, the Court believes, shows that Defendant will not suffer great harm from granting the motion. The Court is also satisfied that removal of the donation bins and discarding of their contents is harmful to the public interest.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Amended Motion for Preliminary Injunction **[Docket No. 10, filed October 7, 2012]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant ATRS is enjoined from removing any of Plaintiffs' donation bins from their proper locations, consistent with the list Plaintiffs shall provide.

**IT IS FURTHER ORDERED** that  within 14 days of entry of this Order, Plaintiffs shall provide the Court with a list of all locations where it has placed a donation bin.

**IT IS FURTHER ORDERED** that Defendant A.T.R.S., Inc.'s Motion for Leave to File Sur-Reply **[Docket No. 25, filed November 19, 2013]** is **GRANTED** as the Court considered the contents of this motion in this Order.

**IT IS SO ORDERED**.

19

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  January 8, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 8, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager